IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:  2017-NMSC-014

Filing Date:  March 9, 2017

Docket No. S-1-SC-35407

STATE OF NEW MEXICO,

Plaintiff-Appellant,

v.

DESIREE LINARES,

Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY
James Waylon Counts, District Judge

Hector H. Balderas, Attorney General
Martha Anne Kelly, Assistant Attorney General
Albuquerque, NM
for Appellant
Bennett Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Public Defender
Santa Fe, NM
for Appellee

## OPINION

**NAKAMURA, Justice.**

{1}    A court-appointed psychologist evaluated Defendant, Desiree Linares, and recommended that she be found incompetent to stand trial due to mental retardation.[1] *See*

---

[1]We are aware that it is no longer acceptable to describe individuals with developmental disabilities as "mentally retarded."  This now-defunct phrase is part and parcel of a rhetoric that dehumanized and delegitimized valuable members of our society.  Sadly, our statutes continue to utilize this troubling convention.  As our duty in this case is to determine whether or not the law as set out by statute was followed, we must use descriptive phrases we find unsettling.  We encourage our Legislature to amend the statutes

NMSA 1978, § 31-9-1.6 (1999).  The State doubted the court-appointed psychologist's testing methodology and conclusions and requested an opportunity to conduct an independent evaluation utilizing its own expert.  The district court granted this request, but because Linares had filed a speedy-trial motion and the proceedings had been fraught with needless and unexplained delay, the district court allowed the court-appointed psychologist to attend and observe the State's independent evaluation to ensure the issue of Linares's mental retardation was quickly resolved.  The State insisted that this was unacceptable and unlawful and declined to conduct the evaluation because the court-appointed psychologist would be present.  Ultimately, the district court accepted the court-appointed psychologist's recommendations and found Linares incompetent due to mental retardation.  Linares was civilly committed to the New Mexico Department of Health (DOH) and the criminal proceedings against her were dismissed.

**{2}** In this direct appeal, the State contends that the district court abused its discretion and effectively denied it an opportunity for an "independent" evaluation  by permitting the court-appointed psychologist to attend the second, independent evaluation which ultimately did not occur.  The State also argues that the district court abused its discretion in concluding that Linares is incompetent to stand trial.  Lastly, the State asserts that the procedural requirements of Section 31-9-1.6(B) and (C), which specify the procedures a district court must follow when committing a defendant to involuntary civil confinement, were not followed.  We find no error in the proceedings below and affirm.

## I.  BACKGROUND

**{3}** Linares and Alexis Shields resided together as the foster children of Evelyn Miranda.  In June 2011, Linares and Shields devised a plan to run away from Miranda's home.  The children intended to place a piece of cloth soaked in nail polish remover over Miranda's mouth and nose rendering her unconscious, tie her down with electrical cords, steal her vehicle, and drive away.  The children's ill-conceived plan went dreadfully awry.  Miranda struggled with the children when they attempted to hold the cloth over her mouth.  Linares restrained Miranda as Shields smothered Miranda with a pillow and suffocated her.  The children fled in Miranda's vehicle but were later apprehended by the authorities.

**{4}** Linares was indicted in June 2011 in the Twelfth Judicial District Court and charged as a serious youthful offender with first-degree (willful and deliberate) murder and (alternatively) first-degree felony murder.[2]  Linares was also charged with a host of other

applicable to the developmentally disabled and replace any terms that have pejorative or derogatory connotations with suitable and respectful alternatives.

[2]The predicate offense underlying the felony-murder charge was unlawful taking of a motor vehicle.

2

lesser offenses.[3]  Shortly after the indictment was filed, Linares filed a demand for speedy trial.

**{5}**     In the months following the indictment, Linares filed several unopposed motions to continue trial, and trial was postponed and reset several times.  At the end of May 2012—nearly a year after Linares was indicted—Linares again sought a continuance, this time indicating that the parties required additional time to negotiate a plea.  The court granted the motion and set an August 24, 2012, plea deadline.

**{6}**     The plea the parties negotiated required Linares to plead no-contest to first-degree (willful and deliberate) murder and to the other lesser charges for which she was indicted and to testify against Shields.  In return, the State agreed to not seek adult sanctions against Linares but to commit her to the care of the Children, Youth and Families Department until the age of 21.

**{7}**     The parties agreed that a predisposition study and report addressing Linares's amenability to treatment would be beneficial and Linares asked the court, citing NMSA 1978, § 32A-2-17 (2005), to order the Children, Youth and Families Department to prepare a pre-disposition report.  In August 2012, the court ordered Linares to undergo a predispositional diagnostic evaluation and Dr. Susan Cave was appointed by the court to conduct that evaluation.

**{8}**     Dr. Cave completed her evaluation on December 5, 2012, and concluded that Linares's intelligence quotient (IQ) is 68 and that she is mildly mentally retarded.  Despite this conclusion, Dr. Cave determined that Linares was "minimally competent to proceed at sentencing."

**{9}**     The court held a change of plea hearing on December 13, 2012, to review the terms of the plea agreement the parties reached and to confirm that Linares understood the terms of the agreement and was entering into it voluntarily.  At that hearing, the court asked both counsel why the case had been delayed so long, noted that plea negotiations had been ongoing for some time, and pointed out that trial had been set for the previous summer.  No adequate explanation for the delay was forthcoming from either party.

**{10}**    On December 28, 2012, Linares withdrew her plea.  Contrary to the parties' agreement, the district court was required by law to impose adult sanctions.  *See generally State v. Jones*, 2010-NMSC-012, ¶ 17, 148 N.M. 1, 229 P.3d 474 (explaining that a serious youthful offender convicted of first-degree murder "*must* receive an adult sentence.").  Trial

---

[3]The lesser offenses charged included conspiracy to commit first-degree murder, conspiracy to commit felony-murder, kidnapping, conspiracy to commit kidnapping, unlawful taking of a motor vehicle, conspiracy to commit unlawful taking of a motor vehicle, larceny, and tampering with evidence.

was once more rescheduled, this time for March 2013.

**{11}** In late January 2013, Linares moved for a hearing on mental retardation. One day after filing that motion, Linares moved to dismiss the case, which had been pending for nineteen months, on speedy-trial grounds.

**{12}** An amended superseding grand jury indictment was filed in February 2013. The first-degree (willful deliberate) murder charge was dropped. Linares was charged with two alternative counts of felony murder[4] and several lesser offenses.[5]

**{13}** At the end of February 2013, the district court entered a sua sponte order vacating the March 2013 trial setting. The court determined that Linares's possible incompetency precluded any further proceedings.

**{14}** In June 2013, the State filed a motion to compel an independent evaluation of Linares's alleged mental retardation on the grounds that Dr. Cave's December 5, 2012, report contained problematic internal inconsistencies. The State emphasized that Dr. Cave's conclusion that Linares is mentally retarded, and thus, incompetent, could not be reconciled with Dr. Cave's conclusion that Linares was competent to enter into a plea. The State also emphasized that Dr. Cave submitted an additional report on May 13, 2013, in which she withdrew her initial conclusion that Linares was ever competent.[6] This subsequent report, the State argued, was further evidence that Dr. Cave's conclusions were suspect.

**{15}** A hearing on the State's motion for an independent evaluation was held on March 14, 2014. At that hearing, the State called Dr. Noah Kaufman, a neuropsychologist, as a witness and elicited testimony from him that called into question both the methodology underlying Dr. Cave's assessment of Linares's IQ and Dr. Cave's determination that Linares is mildly mentally retarded.

**{16}** At the end of the hearing, the court agreed that the State's concerns about the reliability of Dr. Cave's evaluation were legitimate and further concluded that the State should have an opportunity to perform an independent assessment of Linares's mental faculties. But growing concern about the delay that had plagued the proceedings prompted the court to grant defense counsel's request that Dr. Cave be permitted to attend the State's independent evaluation. The court made clear, however, that Dr. Cave could not participate or interfere with the State's evaluation in any way.

---

[4]Kidnapping and robbery served as the alternative predicate felonies.

[5]The lesser charges included kidnapping, conspiracy to commit kidnapping, robbery, conspiracy to commit robbery, and tampering with evidence.

[6]Dr. Cave's May 13, 2013, report was not made part of the record proper.

4

**{17}** At the end of March 2014, the State filed a motion to prohibit Dr. Cave from attending its independent evaluation. At the motion hearing, Dr. Kaufman insisted that the rules of professional conduct governing psychologists precluded him from conducting a neuropsychological examination where a third-party observer would be present. The district court was unpersuaded and affirmed its earlier ruling that Dr. Cave could attend and observe the independent evaluation. The court made clear that its decision to permit Dr. Cave to attend was motivated by the court's desire to avoid any further delay in the proceedings and to ensure that the issue of Linares's mental retardation was resolved as efficiently and as quickly as possible. The State stood firm and indicated that it would not conduct the evaluation if Dr. Cave would be present. The court also stood firm and entered an order quashing its previous order permitting the independent evaluation.

**{18}** A final hearing to decide whether or not Linares is mentally retarded was held on September 11, 2014. Dr. Cave was present and testified, consistent with her reports, that Linares's IQ is 68 and that she is mentally retarded as that term is defined in Section 31-9-1.6(E). The State called yet another psychologist, Dr. Edward Siegel, as a witness. Like Dr. Kaufman, Dr. Siegel attempted to discredit and undermine Dr. Cave's conclusions by highlighting the alleged inadequacies of her evaluation methods and by pointing out several inconsistencies throughout her reports. At the conclusion of the hearing, the court advised the parties that it would pronounce its ruling by written order.

**{19}** In an order dated October 2, 2014, the court found that Linares's IQ is 68 and concluded that Linares is mentally retarded as defined by Section 31-9-1.6(E). The court also found that there was not a substantial probability that Linares would become competent to proceed in a criminal or youthful-offender case within a reasonable time and that, because Linares was accused of first-degree murder,[7] she poses a likelihood of harm to others. Finally, the court ordered that Linares was to remain in the custody of the Lincoln County Detention Center pending commencement of civil commitment proceedings.

**{20}** The civil commitment proceedings were conducted in the Thirteenth Judicial District Court. In the petition initiating those proceedings filed by the DOH on January 27, 2015, the DOH averred that Linares is a danger to herself and others and recommended that the court commit Linares to the DOH for a period of habilitation. The Thirteenth Judicial District Court agreed with the DOH's findings and accepted the recommendation to civilly commit Linares to the DOH.

**{21}** On June 11, 2015, the State filed a direct appeal with this Court under NMSA 1978,

---

[7]The district court's order states that Linares "is charged with First Degree Murder (Willful and Deliberate) or, in the alternative, Felony Murder . . . ." The amended superseding grand jury indictment did not charge Linares with first-degree willful and deliberate murder. As noted, the amended grand jury indictment included only two alternative counts of first-degree felony murder.

Section 39-3-3(B) (1972), and *State v. Smallwood*, 2007-NMSC-005, 141 N.M. 178, 152 P.3d 821. Our jurisdiction over this matter is not contested.

## II. DISCUSSION

**{22}** As previously noted, the State makes three arguments on appeal. We review each argument in turn.

### A. The District Court's Decision to Permit Dr. Cave to Attend the State's Independent Evaluation Was Not an Abuse of Discretion and Did Not "Effectively Deny" the State an Opportunity for an Independent Evaluation

**{23}** The State first argues that the district court abused its discretion in permitting Dr. Cave to attend the State's independent evaluation. As the ensuing discussion makes clear, this argument requires us to review the district court's discretionary determination. *See State v. Garcia*, 2000-NMCA-014, ¶ 28, 128 N.M. 721, 998 P.2d 186 (reviewing the district court's denial of the state's request for a second competency evaluation for abuse of discretion); *State v. Lopez*, 1978-NMSC-060, ¶ 3, 91 N.M. 779, 581 P.2d 872 (observing that we review the district court's ruling as to a defendant's competency to stand trial for abuse of discretion).

**{24}** "Where an abuse of discretion is claimed by appellant, appellant bears a heavy burden, in view of the long-standing rule that the reviewing court will not overturn the action of the trial court absent a patent abuse of manifest error in the exercise of discretion." *Spingola v. Spingola*, 1978-NMSC-045, ¶ 19, 91 N.M. 737, 580 P.2d 958. "An abuse of discretion occurs when a ruling is against logic and is clearly untenable or not justified by reason." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72 (internal quotation marks and citation omitted). We view the evidence in the light most favorable to the district court's decision, resolve all conflicts and indulge all permissible inferences to uphold that decision, and disregard all evidence and inferences to the contrary. *See Lopez*, 1978-NMSC-060, ¶¶ 6-7.

**{25}** "Section 31-9-1.6 articulates the procedure for determining whether a defendant is incompetent to stand trial as a result of mental retardation . . . ." *State v. Flores*, 2004-NMSC-021, ¶ 10, 135 N.M. 759, 93 P.3d 1264. Section 31-9-1.6(A) provides that "[u]pon motion of the defense requesting a ruling, the court shall hold a hearing to determine whether the defendant has mental retardation as defined in Subsection E of this section." Section 31-9-1.6(E) and our case law make clear that an "intelligence quotient of seventy or below establishes a presumption of mental retardation." *Flores*, 2004-NMSC-021, ¶ 10 (citing Section 31-9-1.6(E)).

**{26}** The varying provisions within Section 31-9-1.6 do not give the district court any specific procedural guidance as to how it is to resolve issues related to a defendant's mental condition. The statute is silent as to when the defendant may move for such an evaluation,

whether the court might independently arrange for an evaluation during the proceedings if it develops concerns about a defendant's mental condition, who must pay for the evaluation, or the time frame that governs once it is determined that an evaluation of the defendant's mental condition is necessary. The procedural rules that govern these issues are found in NMSA 1978, Section 43-1-1 (1999) and Rule 5-602 NMRA. The State points to Rule 5-602(C) and case law construing this provision as support for its claim that permitting Dr. Cave to attend the independent evaluation was an abuse of discretion.

**{27}** Rule 5-602(C) provides that "[u]pon motion and upon good cause shown, the court shall order a mental examination of the defendant before making any determination of competency under this rule." Looking to the plain text of Rule 5-602(C), the Court of Appeals has observed that it "provides an appropriate procedure for any request, be it initial or subsequent, for court-ordered mental evaluations of a criminal defendant." *Garcia*, 2000-NMCA-014, ¶ 26. The Court noted, however, that the rule neither permits nor prohibits additional evaluations. *Id.* Accordingly, the Court concluded that a district court's decision to order a second evaluation is entirely discretionary. *Id.* ¶ 28. We agree with this conclusion.

**{28}** The unexplained delay that plagued Linares's case as well as the specter of Linares's speedy-trial motion weighed heavily on the district court's assessment of the arguments presented at the March 14, 2014, hearing, the hearing at which the court determined that the State would be allowed an independent evaluation and that Dr. Cave could attend that evaluation. Defense counsel initially suggested, at that hearing, that the issue of Linares's mental retardation would be most expeditiously resolved if the State's independent evaluation was limited only to an assessment of Linares's IQ. The court disagreed, expressed concern that any half-measures would only give rise to the possibility for further delays, and concluded that it was most prudent to give the State a full opportunity to completely address and resolve the issue of Linares's retardation. Defense counsel then inquired whether Dr. Cave could attend the State's evaluation and suggested that this alternative would also do much to ensure that the proceedings were expedited. Counsel explained that, if Dr. Cave was satisfied with the procedures used during the independent evaluation, there would be no need for any further evaluations and no further delays. The court emphasized that its interest was to ensure a speedy resolution of the issue and asked the State whether it had any opinion on the matter. The State responded that it was not amenable to defense counsel's suggestion.

**{29}** In the end, the court permitted Dr. Cave to attend the evaluation because the efficient administration of justice demanded this result. The court made it abundantly clear that its decision to permit Dr. Cave to attend was predicated on the fact that there had been unnecessary delay and the attorneys had not been diligent in seeing the case brought to a timely resolution. The court informed the State that, if Dr. Kaufman felt he could not conduct the evaluation with Dr. Cave present, the court was inclined to quash the order granting the independent evaluation. The State declined to conduct the evaluation and the court quashed its previous order.

**{30}** It is apparent that the court was willing to permit Dr. Cave to attend the State's evaluation because Linares's speedy-trial claim loomed, there had been unnecessary delay, and allowing Dr. Cave to attend would put her in the best position to testify and comment about the tests conducted at the independent evaluation and how those tests were scored. Putting Dr. Cave in this position ensured that, if there was any future disagreement between the parties about the merits of the State's testing methodology, those issues could be addressed and resolved quickly. We recognize that permitting observers to attend psychological evaluations is undesirable, but this does not outweigh the district court's reasonable concerns about delay.

**{31}** The district court permitted Dr. Cave to attend the State's independent evaluation so as to ensure the swift administration of justice and balance the competing interests of the parties. The court's decision was not, as the State contends, arbitrary, illogical, or without justification. The court's determination was an acceptable and understandable exercise of its discretionary authority in light of the unique difficulties presented in this case.

**B.** **The Trial Court Did Not Abuse Its Discretion in Finding Linares Incompetent to Stand Trial**

**{32}** The State next argues that the district court abused its discretion in concluding that Linares is incompetent to stand trial due to mental retardation. The State points out that Dr. Cave initially reported that Linares was competent to enter into a plea and proceed at sentencing and further notes that some portions of Dr. Cave's reports and testimony support the conclusion that Linares is competent to stand trial. The standard of review applied to this argument is the same as that applied to the arguments in the immediately preceding section of discussion.

**{33}** A defendant may be incompetent to stand trial due to mental retardation; however, mental retardation, in and of itself, is not conclusive evidence that a defendant is incompetent. *See* 21 Am. Jur. 2d *Criminal Law* § 86 (2016) (footnote omitted) ("Although mental retardation in and of itself is generally insufficient to give rise to a finding of incompetence to stand trial, a defendant may be incompetent based on retardation if the condition is so severe as to render him or her incapable of functioning in critical areas."); *see also* 27 Am. Jur. *Trials* 1 (Originally published in 1980) (footnotes omitted) ("[N]ot all forms of . . . mental retardation . . . make one incompetent to stand trial. In all cases, the pivotal question to be answered is to what degree does the . . . disability affect the defendant's memory and intellectual abilities, which are crucial to the construction and presentation of his defense.") (internal quotation marks omitted); ABA Standards for Criminal Justice 7-4.1(c) *Mental Incompetence to Stand Trial; Rules and Definitions* (Am. Bar Ass'n 1989) ("A finding of mental incompetence to stand trial may arise from . . . mental retardation or other developmental disability . . . so long as it results in a defendant's inability to consult with defense counsel or to understand the proceedings.").

**{34}** A person is competent to stand trial when he or she has "sufficient present ability to

consult with his lawyer with a reasonable degree of rational understanding[,]" "a rational as well as factual understanding of the proceedings against him[,]" and "the capacity to assist in his own defense and to comprehend the reasons for punishment."[8]  *State v. Rotherham*, 1996-NMSC-048, ¶ 13, 122 N.M. 246, 923 P.2d 1131 (internal quotation marks and citations omitted).  Linares's mental retardation may factor into this analysis—and may factor heavily—but the mere fact that she is mentally retarded does not, in and of itself, resolve the question of her competency.

**{35}**    The district court concluded that Linares's IQ is 68, that she has mental retardation, that the State did not overcome the presumption that an accused with an IQ below 70 has mental retardation, and, therefore, that Linares is "not competent to stand trial due to mental retardation."  At first blush, the court appears to have done precisely what is impermissible: conclude that Linares is incompetent *solely because* she is mentally retarded.  Careful review of the testimony proffered at Linares's September 11, 2014, hearing on mental retardation reveals that this is not so.  The court also heard evidence bearing directly on the faculties, identified in *Rotherham*, a defendant must possess to be deemed competent and the extent to which Linares possessed these faculties.

**{36}**    Dr. Cave repeatedly emphasized that she had concerns about Linares proceeding to trial in light of her low IQ and limited intellectual functioning.  Dr. Cave reported that Linares performed very poorly on a portion of one test that focuses on "understanding case events."  When asked what function a jury serves, Linares replied that the jury was there to "give answers for the other side."  When asked what role the prosecutor played at trial, Linares replied that the prosecutor was there to tell her (Linares's) side of the story.  Dr. Cave also expressed doubt that Linares would be able to assist defense counsel as Linares could not recall critical events associated with her case.  Crucially, Dr. Cave stated that Linares exhibited no signs of malingering.

**{37}**    Dr. Cave also testified that her determination that Linares is incompetent was in part premised on the fact that Linares was facing first-degree murder charges.  Dr. Cave did not

---

[8]The Court of Appeals in *State v. Gutierrez*, 2015-NMCA-082, ¶ 9, 355 P.3d 93 and the uniform jury instructions district courts must issue when the evidence raises a reasonable doubt as to the defendant's competency, UJI 14-5104 NMRA, utilize a different formulation of the conditions necessary for a defendant to be deemed competent.  It is unclear where this divergent standard originated or why it originated, and it is equally unclear whether this divergent standard (though worded differently) is substantively distinct from the standard articulated in *Rotherham*.  It is clear, however, that the existence of this divergent standard gives rise to the possibility for needless confusion.  For instance, the State cites the Court of Appeals formulation in *Gutierrez* while Linares cites to this Court's formulation in *Rotherham*.  The parties do not, however, make any arguments for one or the other standard; they simply state the divergent standards as if both are correct.  We adhere to the formulation articulated in *Rotherham* as that case remains controlling precedent.

expound upon why the nature and severity of the charges against Linares factored into her competency assessment, but it seems apparent that Dr. Cave was concerned that a young woman of very limited intellectual functioning with a fundamentally flawed conception of basic legal concepts would not and could not understand the full possible consequences of a first-degree murder conviction nor why, if convicted, she might be required to spend the rest of her foreseeable life in prison.

**{38}**     The evidence adduced at the mental retardation hearing supports the conclusion that Linares is incapable of consulting with her attorney with a reasonable degree of rational understanding, that she holds a fundamentally incoherent view of the nature of the proceedings that were to be brought against her, and that she would not comprehend the reasons for punishment if she were convicted.  Accordingly, substantial evidence supports the district court's determination that Linares is incompetent.  The court did not abuse its discretion in so concluding.

**{39}**     While it is true, as the State points out, that the record reflects that Dr. Cave initially concluded that Linares was competent and that there is evidence in the record that Linares did understand the nature of the charges against her, we cannot say that the court abused its discretion when it ultimately rejected the conclusion that Linares is competent.  Our inquiry is limited only to whether substantial evidence supports the conclusion the court reached.  *See State v. Nelson*, 1981-NMSC-100, ¶ 15, 96 N.M. 654, 634 P.2d 676 ("The evidence presented to the court was conflicting, and we cannot hold as a matter of law that the trial judge abused his discretion in finding that the defendant was competent.").

**C.     The DOH Did Conduct a Dangerousness Evaluation Prior to the Commencement of Civil Commitment Proceedings**

**{40}**     The State's final argument concerns the procedural requirements mandated by Section 31-9-1.6(B) and  (C).  The State contends that these provisions required the "trial court" to obtain a dangerousness evaluation of Linares from the DOH before civil commitment proceedings commenced.  The State claims that this was not done.   As a preliminary matter, we note that the State's argument that the "trial court" failed in some capacity presents us with a difficulty as this claim ignores the fact that while the competency proceedings were conducted in the Twelfth Judicial District Court the civil commitment proceedings were conducted in the Thirteenth Judicial District Court.  The State's reference to a "trial court" does not adequately identify which of the two courts involved in the proceedings below allegedly erred.  In any case, and as we explain in the discussion that follows, our review of the statutes and the proceedings below convince us that the State's argument fails.

**{41}**     The State's argument requires us to construe Section 31-9-1.6(B) and (C) and to determine whether the proceedings in district court conformed to the requirements of these provisions.  To the extent we engage in statutory construction, our review is de novo.  *State v. Trujillo*, 2009-NMSC-012, ¶ 9, 146 N.M. 14, 206 P.3d 125.

10

**{42}**     Section 31-9-1.6(B) provides as follows:

> If the court finds by a preponderance of the evidence that the defendant has mental retardation and that there is not a substantial probability that the defendant will become competent to proceed in a criminal case within a reasonable period of time not to exceed nine months from the date of the original finding of incompetency, then no later than sixty days from notification to the secretary of health or his designee of the court's findings the [DOH] shall perform an evaluation to determine whether the defendant presents a likelihood of serious harm to himself or a likelihood of serious harm to others.

Section 31-9-1.6(C) then provides that:

> If the [DOH] evaluation results in a finding that the defendant presents a likelihood of serious harm to himself or a likelihood of serious harm to others, within sixty days of the [DOH's] evaluation the [DOH] shall commence proceedings pursuant to Chapter 43, Article 1 NMSA 1978 if the defendant was charged with murder in the first degree . . . in the initial proceedings, and the court presiding over the initial proceedings shall enter a finding that the respondent presents a likelihood of harm to others.

We shall not attempt to fully explicate the procedural requirements of these provisions and focus instead only on the requirements germane to the State's argument. We agree with the State that these provisions require the DOH to perform a dangerousness evaluation before civil commitment proceedings are commenced. *See State v. Gutierrez*, 2015-NMCA-082, ¶ 47, 355 P.3d 93 ("Once a defendant is found to have mental retardation, the statute requires a [DOH] evaluation regarding whether the defendant poses a serious threat of harm to himself or others. If the [DOH] finds that the defendant is dangerous, then Section 43-1-1 civil commitment proceedings must be commenced."). We disagree, however, that this requirement was not met in this case.

**{43}**     On October 2, 2014, the Twelfth Judicial District Court entered an order finding that Linares is incompetent due to mental retardation, that there was not a substantial probability that Linares would become competent within a reasonable period of time not to exceed nine months, and that Linares is a danger to others. In that same order, the court directed the DOH to commence civil commitment proceedings under Section 43-1-1, but the court made clear that until the DOH commenced those proceedings, Linares would remain in the custody of the Lincoln County Detention Center.

**{44}**     On January 27, 2015, the DOH filed a petition with the Thirteenth Judicial District Court for the involuntary commitment of Linares under Section 43-1-1. The DOH's petition states that Linares's "developmental disability creates an imminent likelihood of serious harm to herself or others." The petition further indicates that Dr. John Gatling was prepared

11

to testify on behalf of the DOH at the anticipated hearing on civil commitment.

**{45}** On February 12, 2015, the Thirteenth Judicial District Court held a hearing and determined that Linares "presents an imminent likelihood of serious harm to herself or others[,]" and that civil commitment was in Linares's best interests and constituted the "least drastic means." *See* § 43-1-13(G). Accordingly, the Thirteenth Judicial District Court committed Linares to the DOH under Section 43-1-13 for a period of habilitation not to exceed six months.

**{46}** The State's contention that the "trial court" erred in some respect by initiating civil commitment proceedings without first obtaining the requisite dangerousness evaluation from the DOH is unavailing. When the Thirteenth Judicial District Court committed Linares to the DOH on February 12, 2015, it did so only after the DOH evaluated Linares and concluded that she was a danger to herself and others and after the court presiding over the initial proceedings—the Twelfth Judicial District Court—found that Linares was a danger to others. To the extent Section 31-9-1.6(B) and (C) require dangerousness determinations, these proceedings complied with the mandates of these provisions. As the State presents no other challenge to the procedure or merits of the civil commitment proceedings, we dedicate no further scrutiny to the subject. *See In re Doe*, 1982-NMSC-099, ¶¶ 2-3, 98 N.M. 540, 650 P.2d 824 (observing that we do not address arguments not raised on appeal).

## III. CONCLUSION

**{47}** For the foregoing reasons, we reject the State's arguments and affirm.

**{48}** **IT IS SO ORDERED.**

_____
**JUDITH K. NAKAMURA, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**BARBARA J. VIGIL, Justice**

12