This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36564**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**MIGUEL JIMENEZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**M. ZAMORA, Judge.**

**{1}** Defendant Miguel Jimenez was convicted of criminal sexual contact of a minor (CSCM) (child under 13), contrary to NMSA 1978, Section 30-9-13(B)(1) (2003).[1] Defendant raises three issues on appeal: (1) his witnesses were improperly excluded by

---

[1]The criminal information charges Defendant of CSCM, pursuant to Section 30-09-13(B)(1); however the judgement and sentence identifies that statutory authority as Section 30-9-13(B)(1). We are reviewing Defendant's appeal, pursuant to Section 30-9-13(B)(1).

the district court; (2) the district court erred when it allowed a lay witness to testify about "delayed reporting" among victims; (3) he was denied effective assistance of counsel; and (4) the cumulative errors require reversal. We affirm.

**BACKGROUND**

**{2}** Defendant's conviction was based on testimonial evidence that he touched his girlfriend's ten-year-old daughter's vagina sometime between March and November 2015. During trial, jurors heard testimony from Victim, Detective Scot Naylor, and Defendant. The jury found Defendant guilty of CSCM. This appeal followed.

**{3}** Because this is a memorandum opinion and the parties are familiar with the facts and the procedural history of the case, we reserve further discussion of pertinent facts for our analysis.

**DISCUSSION**

**I.      The District Court Did Not Abuse Its Discretion When It Excluded Defendant's Witnesses**

**{4}** This case was set, and continued for trial on four different dates. During each of the pre-trial hearings, the parties relayed to the district court that they were prepared for trial. However, after each of the pre-trial hearings, Defendant moved for a continuance. On March 31, 2017—three weeks before the third trial setting, and about one year after arraignment—Defendant submitted a notice of witnesses list. The list included the names of eleven individuals who Defendant could potentially call during trial. The State promptly moved to exclude the witnesses, arguing that the late notice violated time frames pursuant to Rule 5-502(A)(3) NMRA, that the State did not have enough time to interview the witnesses before trial, and that it would be prejudicial to the State's case if the witnesses were allowed to testify. The district court granted the State's motion to exclude the witnesses. Defendant alleges that the district court abused its discretion when it excluded his witnesses before trial.

**{5}** We review the district court's decision to exclude evidence for an abuse of discretion. *State v. Guerra*, 2012-NMSC-014, ¶ 23, 278 P.3d 1031. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Le Mier*, 2017-NMSC-017, ¶ 22, 394 P.3d 959 (internal quotation marks and citation omitted). When reviewing for an abuse of discretion, "[w]e view the evidence in the light most favorable to the district court's decision, resolve all conflicts and indulge all permissible inferences to uphold that decision, and disregard all evidence and inferences to the contrary." *State v. Linares*, 2017-NMSC-014, ¶ 24, 393 P.3d 691.

**{6}** Our Supreme Court stated that the "exclusion of a witness is improper absent an intentional refusal to comply with a court order, prejudice to the opposing party, and

consideration of less severe sanctions[.]" *State v. Harper*, 2011-NMSC-044, ¶ 15, 150 N.M. 745, 266 P.3d 25. One week after the district court's order excluding defense witnesses in this case, our Supreme Court decided *Le Mier*. *Le Mier* reiterated and clarified *Harper* stating that "[c]ourts must evaluate the considerations identified in *Harper*—culpability, prejudice, and lesser sanctions—when deciding whether to exclude a witness and must explain their decision to exclude or not to exclude a witness *within the framework articulated in Harper*[.]" *Le Mier*, 2017-NMSC-017, ¶ 20 (emphasis added). Given that *Le Mier* was decided after the district court's decision in the present case, we issued an order for limited remand to allow the district court an opportunity to explain its decision to exclude the witnesses as instructed by *Le Mier*. *See State v. Lewis*, 2018-NMCA-019, ¶ 1, 413 P.3d 484 (reversing and remanding sanction of dismissal because the district court did not explain its decision on record).

**{7}** In response to our order for limited remand, the district court entered an explanation of ruling regarding the circumstances surrounding its decision to exclude the Defendant's witnesses. We conclude that the explanation provides us with an adequately developed record so we may review the district court's consideration of the *Harper* factors.

**{8}** The first *Harper* factor requires the district court to consider the culpability of the offending party. The district court found that Defendant's initial list of eleven witnesses filed a year late was a "flagrant violation of the rules." In support of its determination, the district court stated that: (1) the parties announced they were ready for trial as early as September 2016; (2) the case was set for a one day jury trial four times, and continued the first three times at Defendant's request; (3) Defendant did not file a witness list in compliance with Rule 5-502, but rather filed the list approximately a year late; (4) the eleven witnesses named were friends or family members of Defendant who were known to Defendant prior to the filing of the case, and were likely duplicative based on Defendant's claim that they were "all aware of the victim's animus"; (5) Defendant was not in custody posing barriers to trial preparation; and (6) Defendant proposed that all eleven witness be allowed to testify without proposing other options to paring down his witness list. Given these facts, we cannot say that the district court abused its discretion in finding Defendant's conduct culpable. *See Le Mier*, 2017-NMSC-017, ¶ 24 ("While here the violations were multiple, a single violation of a discovery order may suffice to support a finding of culpability.").

**{9}** The second *Harper* factor requires the district court to consider prejudice to the adversely affected party. Prejudice can be to the adverse party or the court. *See id.* ¶ 26 (holding that failure to comply with discovery obligations necessarily involves some amount of prejudice to both the opposing party and to the court). In support of its determination that there was prejudice to the State, the district court stated: (1) based on the district court's knowledge that the prosecutor assigned to this case had a heavy, and complex felony case load, with numerous trials set before two different district court judges within the relevant two-month timeframe, the State would not have time to interview the witnesses within the three weeks before trial; (2) if the State was required to interview the witnesses, the case would need to be continued yet again; and (3) if the

case was continued, it would be emotionally difficult for the child victim who had already been twice prepped for trial, and which would likely be harmful to a case where evidence is largely based on Victim's testimony. The district court was also prejudiced by Defendant's failure to comply with discovery rules. His noncompliance required the district court to devote time and resources to addressing his failure to comply with these rules. *See id.* (stating when the court's time is wasted, it is prejudicial). The district court noted the major challenges in managing the county's criminal docket and bringing the cases to timely trial. *See id.* (stating that "[c]ourts need not suffer nor tolerate a party's inability to comply with rules and order but must instead ensure that the party's non-compliance does not result in the waste of judicial resources"). We conclude that Defendant's actions resulted in some degree of prejudice to the State and the district court.

**{10}**     The third *Harper* factor requires district courts to consider the availability of lesser sanctions. *Le Mier* instructs that district courts are "not obligated to consider every conceivable lesser sanction before imposing witness exclusion . . . [r]ather, the [district] court was only required to fashion the least severe sanction that best fit the situation and which accomplished the desired result." *Id.* ¶ 27. The district court considered a continuance and financial sanction against defense counsel, but determined that such a sanction would not have been sufficient to remedy the prejudice to the State. The district court also weighed Victim's rights to the "timely disposition of the case[,]" *see* Victim's Rights Act, NMSA 31-26-4(B) (1999, amended 2019), against the fact that the case had been pending for over thirteen months, at the time of the hearing on the State's motion to exclude Defendant's witnesses. The district court further found that a monetary sanction would be insufficient to preserve the integrity of the court and its ability to manage its docket and discourage delay tactics. *Le Mier* affirms that courts have the inherent authority to impose meaningful sanctions to promote efficient judicial administration. 2017-NMSC-017, ¶ 19. The district court has shown it considered lesser sanctions as required under *Harper* and *Le Mier*, and that the sanctions imposed were within the district court's powers. We conclude the district court did not abuse its discretion in excluding Defendant's proposed witnesses.

## II.     Detective Naylor's Statement Regarding Delayed Reporting Did Not Constitute Plain Error

**{11}**     Detective Naylor testified regarding his investigation into the incident. Detective Naylor observed Victim's S.A.F.E. House interview, and personally conducted an interview with Defendant. Detective Naylor testified that he did not take Victim to a hospital or a medical professional because when she reported the incident there had been a delay in time between the date of the incident and the date she reported. Detective Naylor affirmed that in his training and experience it was common for victims to delay reporting sexual abuse. He further testified that there were many different reasons for delayed reporting, including age, fear, or needing to be around the right person or situation.

**{12}** Defendant argues that because Detective Naylor was not qualified as an expert witness, his testimony about delayed reporting was an obvious error. Defendant also contends Detective Naylor's testimony bolstered Victim's credibility. Defendant concedes that the testimony was admitted without any objection; but nevertheless contends that the admission of such testimony constitutes plain error.

**{13}** "Appellate courts review unpreserved evidentiary questions for plain error." *State v. Miera*, 2018-NMCA-020, ¶ 13, 413 P.3d 491; *see* Rule 11-103(E) NMRA ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved."). "The plain error rule is not as strict as the doctrine of fundamental error in its application." *State v. Paiz*, 1999-NMCA-104, ¶ 28, 127 N.M. 776, 987 P.2d 1163. Thus, "we need not determine that there has been a miscarriage of justice or a conviction in which the defendant's guilt is so doubtful that it would shock the conscience of the court to allow it to stand." *State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071. The plain error rule should be used sparingly, since it is an exception to the general rule that a party must raise a timely objection, which promotes efficiency and fairness. *Paiz*, 1999-NMCA-104, ¶ 28.

**{14}** Generally, violations of the rules of evidence are considered to be non-constitutional error, which is harmless "when there is no reasonable probability the error affected the verdict." *State v. Duran*, 2015-NMCA-015, ¶ 19, 343 P.3d 207 (emphasis, internal quotation marks, and citation omitted). However, where there is a lack of preservation, "[w]e apply [plain error] only in evidentiary matters and only if we have grave doubts about the validity of the verdict." *State v. Dylan J.*, 2009-NMCA-027, ¶ 15, 145 N.M 719, 204 P.3d 44 (internal quotation marks and citation omitted); *Paiz*, 1999-NMCA-104, ¶ 28 (noting that an appellate court must have grave doubts about the validity of the verdict, based on an error that infects the fairness or integrity of the judicial proceeding).

**{15}** In determining whether there has been plain error, we "examine the alleged errors in the context of the testimony as a whole." *State v. Barraza*, 1990-NMCA-026, ¶ 18, 110 N.M. 45, 791 P.2d 799. In examining the testimony as a whole, we observe that the jurors heard not only Detective Naylor's testimony, but also that of Victim and Defendant, both of whom affirmed there was inappropriate touching. Victim testified to the following events at trial. She slept on the couch in the family's living room the night before the incident. In the morning, Defendant came from his bedroom and laid behind her on the couch. While he was laying behind her, he put his hand in her pants and in her underwear, and touched her "cookie," "for a long time." After Defendant told Victim not to tell anyone she got up and went to the restroom, where she stayed until her mom finally woke up.

**{16}** The jurors also heard Defendant twice admit to touching Victim. The first time Defendant admitted to touching her was during the interview between him and Detective Naylor at the police department. The second time was during trial when Defendant took the stand to testify. On cross-examination, Defendant testified that he told Detective Naylor he touched her because "[he] didn't think it was going to be that bad." He

testified "there was no . . . nothing really, just touching, I took my hand out . . . I figured there was nothing really done, so there couldn't be that much of penalty [sic] or anything."

**{17}** Despite the Victim's testimony and Defendant's, Defendant suggests we should focus only on Detective Naylor's delayed reporting testimony. Defendant relies on *Duran*, for the proposition that it is improper for lay witnesses—such as Detective Naylor—to testify regarding the fact that victims of sexual assault commonly delay reporting the abuse. We distinguish *Duran* on two grounds. First, the *Duran* court applied an abuse of discretion standard of review for the preserved evidentiary issue, as well as a de novo review for any misapprehensions of the law that the district court may have based on an otherwise discretionary evidentiary ruling. 2015-NMCA-015, ¶11. Second, the credibility of the victim was a central focus of the State's case. *Id.* ¶ 25 ("Victim's credibility . . . was the central factual issue that the jury was to determine at trial[.]").

**{18}** Because the testimony about delayed reporting strongly supported the victim's credibility in *Duran*, we concluded that its admission was reversible error. *Id.* ¶¶ 26-27. There, the victim delayed reporting the abuse for many years. *Id.* ¶ 2. Because of the significant delay of time in reporting, her credibility was squarely at issue. *Id.* ¶ 25. That is not the case here. In this case, Victim's credibility was not a central factual issue, as Defendant twice admitted that he touched Victim. *Duran* is of no assistance to Defendant under the circumstances of this case.

**{19}** Even if we were to agree with Defendant's argument that Detective Naylor was not qualified to testify as an expert witness about delayed reporting, Defendant has failed to establish that Detective Naylor's testimony created such grave doubts as to the validity of the verdict after "examin[ing] the alleged errors in the context of the testimony as a whole." *Barraza*, 1990-NMCA-026, ¶ 18. Defendant and Victim both testified that Defendant engaged in criminal sexual contact. Defendant twice admitted to engaging in criminal sexual contact of the Victim—once in his video interview with Detective Naylor and once during his trial testimony on cross-examination. The testimony presented at trial is substantial evidence on which the jury could find Defendant guilty of CSCM. *See State v. Brown*, 1984-NMSC-014, ¶¶ 9-12, 100 N.M 726, 676 P.2d 253 (reviewing the evidence in the light most favorable to the verdict and resolving all conflicts in the evidence in favor of the verdict of the jury). Our review of the testimony, as a whole, does not cause "grave doubts about the validity of the verdict." *Dylan J.*, 2009-NMCA-027, ¶¶ 15, 19. Accordingly, we conclude that the admission of Detective Naylor's delayed reporting testimony did not constitute plain error.

## III.    Ineffective Assistance of Counsel

**{20}** On appeal, Defendant raises several claims of error by trial counsel which he asserts denied him effective assistance of counsel. Defendant claims counsel was ineffective because counsel failed to: (1) timely file the witness list; (2) call available witnesses to the stand to impeach Victim's testimony; (3) impeach Victim with prior

inconsistent statements; and (4) object to improper prejudicial testimony by Detective Naylor.

**{21}**   In order to prevail on a claim of ineffective assistance of counsel, Defendant has the burden of establishing a prima facie claim of ineffective assistance. *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. To establish a prima facie claim, Defendant must "demonstrate error on the part of counsel, and then show that" he was prejudiced by that error. *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (citing *Strickland v. Washington*, 466 U.S. 668, 690, 692); *see Patterson v. LeMaster*, 2001-NMSC-013, ¶ 1, 130 N.M. 179, 21 P.3d 1032 (stating that a prima facie claim is established by showing that counsel's performance fell below the performance of a reasonably competent attorney and that counsel's deficient performance prejudiced defendant).

**{22}**   As to the prejudice prong of the analysis, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Patterson*, 2001-NMSC-013, ¶ 28. "[I]f there is a plausible, rational strategy or tactic to explain the counsel's conduct," a defendant does not make a prima facie case for ineffective assistance of counsel. *State v. Jacobs*, 2000-NMSC-026, ¶ 49, 129 N.M. 448, 10 P.3d 127.

**{23}**   Defendant asserts that had counsel timely filed the notice of witnesses, the jurors would have heard testimony that Victim had a bias, and motive to fabricate the story. Even if counsel had acted unreasonably in failing to timely submit the notice of witnesses, Defendant has failed to establish a prima facie case. Defendant does not direct us to an evidence in the record to support his contention that Victim had a motive to fabricate her version of events. In fact, the jurors heard Defendant twice admit to the CSCM. We conclude that there is no reasonable probability that but for the exclusion of the witnesses, the result of the trial would have been different.

**{24}**   In regards to Defendant's remaining claims of ineffective assistance of counsel on this record, Defendant has not demonstrated that any of counsel's actions cannot be construed as trial strategy or tactic. *See Jacobs*, 2000-NMSC-026, ¶ 49 ("An attorney's decision to object [or not to object] to testimony or other evidence is a matter of trial tactics."). We conclude that Defendant has failed to demonstrate a prima facie case of ineffective assistance of counsel. Defendant, however, is not precluded from pursuing his arguments and developing a proper record in a habeas corpus proceeding. *Bernal*, 2006-NMSC-050, ¶ 36.

## IV.   The Doctrine of Cumulative Error Does Not Require Reversal

**{25}**   Finally, Defendant argues that his conviction should be reversed because the combined impact of the errors deprived him of a fair trial. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807,

*overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 75 P.3d 110. Finding no error in the district court proceedings, there was no cumulative error.

**CONCLUSION**

**{26}** Based on the foregoing, we affirm the Defendant's conviction.

**{27}   IT IS SO ORDERED.**

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JACQUELINE R. MEDINA, Judge**