# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMSC-029

Filing Date: August 2, 2021

No. S-1-SC-38151

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**NICHOLAS ORTIZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Judge**

Released for Publication November 23, 2021.

Bennett J. Baur, Chief Public Defender
Kimberly M. Chavez Cook, Appellate Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**THOMSON, Justice.**

**{1}** Defendant Nicholas Ortiz was sixteen at the time he committed first-degree, felony murder. The New Mexico Legislature has established three categories of juvenile offenders that govern the sentencing of a "person who is less than eighteen years old." NMSA 1978, § 32A-1-4(B) (1993, as amended through 2019). The Delinquency Act, NMSA 1978, §§ 32A-2-1 to -33 (1993, as amended through 2019), identifies these categories as "delinquent offender[s]," "youthful offender[s]," and "serious youthful offender[s]." *See* § 32A-2-3(C), (H), (J). We address whether it is constitutionally

permissible for the Legislature to exclude serious youthful offenders convicted of first-degree, felony murder from receiving an amenability hearing while providing it to other categories of juvenile offenders.

**{2}** Delinquent offenders and youthful offenders are sentenced under the Delinquency Act, which provides for a determination of whether a defendant is amenable to treatment or rehabilitation as a juvenile prior to sentencing. *See* § 32A-2-19(B); § 32A-2-20(B)(1). This "special proceeding" is "known as an amenability hearing." *State v. Jones*, 2010-NMSC-012, ¶ 13, 148 N.M. 1, 229 P.3d 474; *see* § 32A-2-19(B) (requiring a court in its "[d]isposition of an adjudicated delinquent offender" to determine whether "treatment is likely to be beneficial"); § 32A-2-20(B)(1) (requiring a court in its "[d]isposition of a youthful offender" to "invoke an adult sentence [if] the child is not amenable to treatment or rehabilitation as a child in available facilities"). However, serious youthful offenders convicted of first-degree murder are not juveniles within the meaning of the Delinquency Act and are therefore sentenced as adults under the Criminal Sentencing Act. *See* NMSA 1978, § 31-18-15.3(D) (1993) (establishing the sentencing procedure when a "serious youthful offender is found guilty of first degree murder"); *but see* § 31-18-15.3(F) (requiring that the court's disposition shall be "pursuant to the provisions of Section . . . 32A-2-19 or 32A-2-20" when a "serious youthful offender is convicted of a lesser offense than first degree murder"). Like Defendant, serious youthful offenders are sentenced without an opportunity for an amenability hearing. Section § 31-18-15.3(D).

**{3}** Defendant appeals his criminal sentence on two grounds. First, he argues that his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Article II, Section 13 of the New Mexico Constitution was violated because he was not afforded an amenability hearing. *See* U.S. Const. amend. VIII; N.M. Const., art. II, § 13. Second, he argues that he was denied equal protection under the law because he was statutorily excluded from receiving an amenability hearing, a process that is guaranteed to youthful offenders who share his requisite criminal intent. *See* U.S. Const. amend. XIV; N.M. Const. art. II, § 18; *see also* § 32A-2-20(B) (providing for an amenability hearing for youthful offenders).

**{4}** We conclude that the sentencing procedure applied to Defendant that did not afford him an amenability hearing does not violate the prohibition against cruel and unusual punishment. We further conclude that a rational basis exists for the Legislature's decision to establish the separate categories that govern the procedure afforded to disparate offenders under the Delinquency Act. Because the facial constitutional challenge to the statutory scheme fails, our inquiry ends there. Reviewing juvenile sentencing procedures for consistency with our society's evolving standards of decency is a laudable endeavor. However, as in this case, such matters of public policy are best addressed by the Legislature. *See State ex rel. Taylor v. Johnson*, 1998-NMSC-015, ¶ 21, 125 N.M. 343, 961 P.2d 768 ("It is the particular domain of the [L]egislature, as the voice of the people, to make public policy." (internal quotation marks and citation omitted)).

## I.     BACKGROUND

**{5}**     On June 19, 2011, New Mexico State Police officers responded to a call from Cherie Rios stating that she had found her mother (Dixie), father (Lloyd), and brother (Steven) (collectively, "Ortiz family") deceased in their home. All three were killed by blows from a pickaxe. Nearly four years later, Defendant was arrested and charged with three counts of first-degree murder, one count of aggravated burglary, one count of conspiracy to commit aggravated burglary, and one count of tampering with evidence related to the deaths of the Ortiz family.

**{6}**     Cousins Ashley Roybal and Jose Roybal were with Defendant throughout the night and early morning when the murders took place. They provided most of the details of the events through a series of interviews with police and testimony at trial. Although their accounts of who came up with the plan and who procured the weapon were sometimes inconsistent, both identify Defendant as the only one who entered the Ortiz home on the night in question.

**{7}**     Jose testified that he, Ashley, and Defendant decided to burglarize the Ortiz home because they were "[t]rying to figure out how to get money," and that Defendant, having spent time in the Ortiz home, "knew there was money there." Ashley maintained that she was not involved in planning the burglary, while Jose identified Ashley as the one who urged him and Defendant to kill the Ortiz family. The plan was for Defendant to "enter the house [and] murder the family," and for Jose to follow "and help him collect everything that was to be t[a]ken." With the plan devised and the materials procured, Ashley drove Jose and Defendant to a location near the Ortiz house and dropped them off in the early hours of the morning.

**{8}**     Jose testified that once they arrived at the home, he refused to go inside to assist with the murders and pleaded with Defendant not to go through with the plan. Defendant became frustrated with Jose, told him to wait, and proceeded towards the Ortiz home as Jose fled the scene on foot. Less than an hour later, Defendant called Ashley and told her that he needed to be picked up near the Ortiz home. When Ashley picked up Defendant, she described him as having a plastic bag around one of his feet and what appeared to be blood on his clothes. While driving back to her grandparents' house, Ashley and Defendant passed Jose. Jose asked Defendant if he did it, and Defendant responded, "yea[h] and I fucked up. I didn't get the money."

**{9}**     The three met up again at Jose and Ashley's grandparents' house where Jose described Defendant as "extremely shooken [sic] up," "extremely terrified, scared," and "[not] like I had seen him before." On Ashley's suggestion, Defendant showered, where, according to testimony, he was heard crying. Ashley then gave Defendant a change of clothes and drove him home, and "[Defendant] cried the entire way."

**{10}**     The next day, Defendant told Ashley that he killed "them" with a pickaxe, but did not specify to whom he was referring. He also stated that Jose was supposed to help but "punked out," so he went into the house by himself. He threatened Ashley, telling her to not say anything, and she believed that he would kill her if she came forward.

Defendant eventually was arrested for the murders and convicted of three counts of felony murder and conspiracy to commit aggravated burglary.[1]

{11}    Prior to sentencing, Defendant filed a motion arguing that the constitutional prohibition against cruel and unusual punishment and the constitutional guarantee of equal protection require "an amenability hearing in conjunction with this Court's sentencing." The district court held a hearing on the motion. However, due to a weather-related flight delay, Defendant's primary expert in support of his motion was unable to appear in person and was not allowed to appear by telephone. The hearing went on without the expert. Defendant filed an additional request for a hearing on the motion, which the district court denied.

{12}    The district court entered its Judgment and Order of Commitment, sentencing Defendant to three counts of first-degree, felony murder and one count of conspiracy. The stand-alone charge for aggravated burglary was vacated. In his sentencing memorandum, Defendant requested that the district court "utilize its sentencing authority under [Section] 31-18-15.3 [and NMSA 1978, Section] 31-18-15.1(G) [(2009)] to sentence him as a serious youthful offender to less than the mandatory sentence," which the court did. While the district court could have sentenced Defendant to a maximum sentence of life imprisonment, it instead ran all of his sentences concurrently for a total of twenty-five years. *See* NMSA 1978, § 30-2-1(A) (1994) (first-degree murder is a capital felony); NMSA 1978, § 31-18-14 (2009) (the sentence for conviction of a capital felony is life imprisonment or life imprisonment without the possibility of parole). Defendant appealed.

## II.    DISCUSSION

### A.    Categories of Child Offenders

{13}    Determining how juvenile offenders are treated for purposes of sentencing requires an analysis of the interplay between the Delinquency Act and the Criminal Sentencing Act. The State's sentencing structure provides varying degrees of procedural protections for three categories of juvenile offenders: delinquent offenders,[2] youthful offenders, and serious youthful offenders. As we discuss, the serious youthful offenders category is the only category of juvenile offenders not guaranteed an amenability hearing before being sentenced.

{14}    Under the Delinquency Act, a "youthful offender" is a delinquent child who is fourteen to eighteen years old and who commits a felony other than first-degree murder *or* is fourteen years old and who is adjudicated for first-degree murder. *See* § 32A-2-3(J) (2009). If a prosecutor seeks to have a youthful offender sentenced as an adult,

---

1Ashley, the only adult conspirator, was ultimately convicted of lesser-degree crimes for her involvement, and Jose was not prosecuted.

2Although not at issue here, a delinquent offender is defined as "a delinquent child who is subject to juvenile sanctions only and who is not a youthful offender or a serious youthful offender." NMSA 1978 § 32A-2-3(C) (2009). Delinquent offenders are entitled to an amenability hearing pursuant to the Delinquency Act. *See* § 32A-2-19.

"the court shall make the following findings in order to invoke an adult sentence: (1) the child is not amenable to treatment or rehabilitation as a child in available facilities; and (2) the child is not eligible for commitment to an institution for children with developmental disabilities or mental disorders." Section 32A-2-20(B), (D) (providing for an amenability hearing). A "serious youthful offender" is defined by the Delinquency Act as "an individual fifteen to eighteen years of age who is charged with and indicted or bound over for trial for first degree murder." *See* § 32A-2-3(H) (2009). It is important to note that the Delinquency Act, in defining a serious youthful offender, does not distinguish types of first-degree murder committed. *Cf.* § 30-2-1(A) (establishing three types of first-degree murder colloquially referred to as willful and deliberate killing, felony murder, and depraved-mind murder).

**{15}** Because he was sixteen at the time he committed the crimes resulting in the first-degree murder convictions, Defendant is considered a serious youthful offender. Section 32A-2-3(H) (2009). As such, he falls outside the scope of the Delinquency Act entirely and is not entitled to its protections or sentencing process. *Id.* ("A 'serious youthful offender' *is not a delinquent child as defined pursuant to the provisions of this section.*" (emphasis added)). The Delinquency Act, including those provisions that require an amenability hearing, therefore does not apply to Defendant. *See* §§ 32A-2-19(B)(4), -20(B)(1) (providing for an amenability hearing for delinquent offenders and youthful offenders, respectively).

**{16}** The Criminal Sentencing Act also provides a different sentencing procedure for serious youthful offenders convicted of first-degree murder and those convicted of lesser crimes. Alleged serious youthful offenders convicted of a crime other than first-degree murder receive amenability hearings pursuant to Delinquency Act provisions that govern delinquent offenders and youthful offenders. *See* § 31-18-15.3(F) (delegating such sentencing to Sections 32A-2-19 and 32A-2-20). However, alleged serious youthful offenders found guilty of first-degree murder are sentenced as adults pursuant to the provisions of the Criminal Sentencing Act. *See* § 31-18-15.3(D). While there is no amenability requirement in these circumstances, there is discretion granted to "sentence the [serious youthful] offender to less than, but not exceeding, the mandatory term for an adult." *Id.* Under the Criminal Sentencing Act, the mandatory sentence Defendant faced for first-degree murder is life imprisonment. *See* § 30-2-1(A) ("Whoever commits murder in the first degree is guilty of a capital felony."); NMSA 1978, § 31-20A-2 (2009) (providing that a "defendant shall be sentenced to life imprisonment" for committing a capital felony, and allowing for the "possibility of release or parole" unless the jury finds "that one or more aggravating circumstances exist"). With an understanding of the categories of juvenile offenders and their impacts on sentencing, we turn to the issues raised by Defendant.

**B.    Issues on Appeal**

**{17}** On appeal, Defendant argues that excluding serious youthful offenders convicted of first-degree, felony murder from the opportunity for an amenability hearing before being sentenced as an adult violates the constitutional prohibition against cruel and unusual punishment. Defendant seeks to expand the constitutional protections against

unlawful sentencing outlined in *Ira v. Janecka*, 2018-NMSC-027, 419 P.3d 161, to require amenability hearings for serious youthful offenders. In addition, Defendant argues that his right to equal protection under the law was violated because amenability hearings are available to youthful offenders who commit second-degree murder, but not to serious youthful offenders who commit first-degree, felony murder. According to Defendant, this distinction raises equal protection concerns because both crimes require general, rather than specific, criminal intent. We address each argument in turn.

## 1. Cruel and Unusual Punishment

**{18}** Defendant maintains that his sentence under the Criminal Sentencing Act constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution and Article II, Section 13 of the New Mexico Constitution. He raises four main arguments in support of this position: (1) "Recent United States Supreme Court jurisprudence demonstrates a sea change in . . . sentencing of children" which requires courts to specifically consider "a child's tendency to engage in impulsive conduct . . . [in order] to ensure fair treatment of children"; (2) the statute that requires an individual under the age of eighteen, in certain circumstances, to be sentenced under the adult procedure "is contrary to evolving standards of decency"; (3) "[e]xcessive punishment . . . is prohibited under the greater protections of the New Mexico Constitution"; and (4) the sentencing scheme denied him the protection of "an amenability hearing which would have assured him the same consideration of his being amenable to rehabilitation guaranteed to children convicted of second-degree murder." As we discuss hereinafter, three of the four theories rely on concepts announced by this Court in *Ira* in its discussions of the contours of the Eighth Amendment and juvenile sentences. The last theory is a restatement of Defendant's equal protection claim.

### a. Standard of review

**{19}** Whether a "sentence is cruel and unusual punishment in violation of the Eighth Amendment and [Article II, Section 13] of New Mexico Constitution is a question of constitutional law," which this Court reviews de novo. *Ira,* 2018-NMSC-027, ¶ 11.

### b. Defendant's sentence does not constitute cruel and unusual punishment

**{20}** *Ira* continues to define our Eighth Amendment jurisprudence on juvenile sentencing. There, we determined that requiring a juvenile defendant to serve forty-six years before he was eligible for parole was not cruel and unusual punishment. *Id.* ¶¶ 34, 38 (reasoning that the defendant's sentence was not "the functional equivalent of a life sentence without the possibility of parole"). Critical to this case is the *Ira* Court's discussion of three United States Supreme Court decisions defining the Eighth Amendment's limitations on juvenile sentencing. The first of these cases "bars the death penalty for an offender who committed his or her offense before the age of eighteen." *Id.* ¶ 13 (citing *Roper v. Simmons*, 543 U.S. 551, 568 (2005)). The next "prohibits juvenile offenders from being sentenced to life without the possibility of parole for a nonhomicide offense." *Id.* (citing *Graham v. Florida*, 560 U.S. 48, 74 (2010), *as modified* (Jul. 6,

2010)). The last "prohibits a State from imposing a mandatory sentence of life without parole for juvenile offenders." *Id.* (citing *Miller v. Alabama*, 567 U.S. 460, 470 (2012)).[3]

**{21}** The *Ira* Court noted that these cases, taken in aggregate, "reveal . . . three themes regarding the constitutionality of juvenile sentencing." *Id.* ¶ 20. "First, juveniles' developmental immaturity makes them less culpable than adults." *Id.* ¶ 21 (reasoning that "juveniles' violations are likely to be a product of 'transient rashness' rather than 'evidence of irretrievabl[e] deprav[ity]'" (quoting *Miller*, 567 U.S. at 471-72) (alterations in original)). "Second, juveniles have a greater potential to reform than do adult criminals which makes it essential that they have a meaningful opportunity to obtain release based on demonstrated maturity and reform." *Id.* ¶ 22 (citing *Graham*, 560 U.S. at 74-75) ("Although the Eighth Amendment does not require a state to release juveniles during their natural lives, it prohibits states from making the judgment at the outset that juveniles will never be fit to reenter society."). "Third, no penological theory—retribution, deterrence, incapacitation, and rehabilitation—justifies imposing a sentence of life without parole on a juvenile convicted of a non-homicide crime." *Id.* ¶ 23 (citing *Graham*, 560 U.S. at 71-75).

**{22}** Defendant urges an expansion of these themes to require an amenability hearing before his sentencing as an adult, arguing that, "[a]bsent an amenability hearing, [his] age and maturity could not be given necessary consideration." Defendant argues that the themes outlined in *Ira* suggest that "[t]he imposition of the statutorily mandated adult sentence without consideration of amenability to rehabilitation fails to reflect the evolving standards of society." *See Trop v. Dulles*, 356 U.S. 86, 101 (1958) ("The [Eighth] Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.").

**{23}** We agree with Defendant that "[m]ajor developments have taken place in juvenile sentencing jurisprudence within the last fifteen years" and that this Court recognized these developments in *Ira*. Certainly, our societal standards of decency regarding juvenile sentencing have and should continue to evolve as we gain a clearer understanding of the psychology and brain development of young criminal offenders. "Adolescents as a group . . . are more impulsive than adults. They underestimate risks and overvalue short-term benefits. They are more susceptible to stress, more emotionally volatile, and less capable of controlling their own emotions." Eileen Hirsch & Martha Askins, *Juvenile Lifers: Reforming Extreme Sentences*, 2021 Wis. L. Rev. 12, 14 (2019) (internal quotation marks and citation omitted). As the Supreme Court stated in *Graham*, "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." 560 U.S. at 73.

---

3As the United States Supreme Court recently explained, this prohibition necessarily grants the sentencer the discretion to impose a lesser punishment in consideration of a defendant's youth. *See Jones v. Mississippi*, ___ U.S. ___, 141 S. Ct. 1307, 1317 (rejecting an argument that the holding of *Miller* required a factual finding that the defendant was "permanently incorrigible" in order to lawfully impose a life-without-parole sentence).

**{24}**   However, in this case, Defendant does not challenge his ultimate sentence. Instead, his Eighth Amendment challenge is to the sentencing *procedure* the statutes prescribe. None of the major developments relied on by Defendant have been applied so as to impede a legislature's policy decision that a juvenile offender who commits first-degree murder can be sentenced as an adult without an amenability hearing, as long as the defendant is not facing a mandatory sentence of life without parole. *See Miller*, 567 U.S. at 470. In New Mexico, "[t]reatment as a child is not an inherent right, but a right granted by the Legislature." *State v. Doe*, 1978-NMCA-025, ¶ 7, 91 N.M. 506, 576 P.2d 1137.

**{25}**   While we recognize that evolving standards of decency may impose additional procedural protections for juveniles in the future, Eighth Amendment jurisprudence does not currently guarantee an amenability hearing to juveniles simply because they are juveniles. This Court may still review the constitutionality of sentencing procedures for juvenile defendants under the New Mexico Constitution. However, in this case, Defendant's sentence of twenty-five years falls well within currently established sentencing protections. Our continued application of *Ira* makes that clear. *See Ira*, 2018-NMSC-027, ¶ 38 ("Certainly the fact that Ira will serve almost 46 years before he is given an opportunity to obtain release is the outer limit of what is constitutionally acceptable."). Therefore, we hold that Defendant's sentence under the Criminal Sentencing Act does not violate the Eighth Amendment of the United States Constitution or Article II, Section 13 of the New Mexico Constitution for excluding serious youthful offenders convicted of first-degree, felony murder from receiving an amenability hearing.

## 2.   Equal Protection

**{26}**   Defendant next argues that he was denied equal protection under the law pursuant to the Fourteenth Amendment to the United States Constitution and Article II, Section 18 of New Mexico Constitution because he was denied "the amenability hearing guaranteed to youthful offenders who share his *mens rea* and moral culpability." *See* U.S. Const. amend. XIV, § 1 ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."); N.M. Const., Art. II, § 18 ("No person shall . . . be denied equal protection of the laws."). Defendant thus avers that it is unlawful to treat juveniles convicted of first-degree, felony murder differently than juveniles convicted of second-degree murder because both require general, rather than specific, criminal intent. However, an equal protection claim cannot be sustained by simply identifying disparate treatment of juvenile offenders. Such a claim can only be mandated if those juvenile offenders are similarly situated. *See* 16B Am. Jur. 2d *Constitutional Law* § 827 (2021) ("The Equal Protection Clause of the 14th Amendment requires public bodies and institutions to treat similarly situated individuals in a similar manner."); *see also Breen v. Carlsbad Mun. Schs.*, 2005-NMSC-028, ¶ 7, 138 N.M. 331, 120 P.3d 413 ("Equal protection, both federal and state, guarantees that the government will treat individuals similarly situated in an equal manner."). As we discuss, an individual who is convicted of first-degree, felony murder is not situated similarly to an individual convicted of second-degree murder. We begin by determining the proper level of scrutiny we should apply to Defendant's challenge.

### a. Defendant's argument is subject to rational basis review

**{27}** Under either the United States Constitution or the New Mexico Constitution, there are three standards of review that this Court uses when reviewing equal protection claims: "strict scrutiny; intermediate scrutiny . . . ; and . . . the rational basis test." *Marrujo v. N.M. Highway Transp. Dep't*, 1994-NMSC-116, ¶ 9, 118 N.M. 753, 887 P.2d 747. "The determination of which level of scrutiny is applicable under the Constitution is a purely legal question, and is reviewed de novo." *Breen*, 2005-NMSC-028, ¶ 15. To determine the appropriate level of scrutiny, the reviewing court must first "decide what interest is involved or to whom the interest belongs." *Marrujo*, 1994-NMSC-116, ¶ 9.

**{28}** Strict scrutiny is reserved for review based on limited suspect classifications of individuals by race, immigration status, or constitutionally protected rights. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (noting that laws that classify "by race, alienage, or national origin" as well as those that "impinge on personal rights protected by the Constitution" are "subjected to strict scrutiny"); *accord Griego v. Oliver*, 2014-NMSC-003, ¶ 44, 316 P.3d 865 ("Race, national origin, and alienage are considered suspect classifications."). Intermediate scrutiny is "used to assess legislative classifications infringing important but not fundamental rights, and involving sensitive but not suspect classes." *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 15, 125 N.M. 721, 965 P.2d 305 (internal quotation marks and citation omitted) ("[C]lassifications based on gender and illegitimacy traditionally have been measured under intermediate scrutiny."); *see Craig v. Boren*, 429 U.S. 190, 197, 210 (1976) (establishing intermediate scrutiny for gender classifications). All other challenges are analyzed pursuant to a rational basis review. *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.").

**{29}** Defendant's premise is that his sentence constitutes cruel and unusual punishment and that freedom from cruel and unusual punishment is a constitutional right. Therefore, he offers strict scrutiny as the proper standard. Alternatively, Defendant asserts intermediate scrutiny is appropriate because "children are a sensitive class with respect to the implementation of severe or excessive punishments and the right to have a meaningful opportunity for rehabilitation." Finally, Defendant asserts that he succeeds even under rational basis review because the statutory "distinction in treatment . . . is arbitrary and unreasonable and does not reasonably further any legitimate legislative objective."

**{30}** Because we have determined that Defendant's sentence does not violate the Eighth Amendment or Article II, Section 13, Defendant is unable to identify a fundamental right that would afford him heightened scrutiny. Nor, for that matter, does Defendant identify a recognized class that would entitle him to heightened scrutiny, since the United States Supreme Court has explicitly "declined . . . to extend heightened review to differential treatment based on age," *City of Cleburne*, 473 U.S. at 441, and New Mexico courts have previously found that age classifications are subject to rational

basis review. *See State v. Setser,* 1997-NMSC-004, ¶ 15, 122 N.M. 794, 932 P.2d 484 (stating that rational basis is the "appropriate standard because the age classification . . . does not adversely impact a fundamental right, nor does it create a suspect classification"); *Doe,* 1978-NMCA-025, ¶¶ 3-4 (utilizing rational basis to analyze the constitutionality of age and offense classification in a prior version of the Children's Code); *see also Marrujo,* 1994-NMSC-116, ¶ 12 (applying rational basis to those interests "that are not fundamental rights, suspect classifications, important individual interests, and sensitive classifications"). We therefore conclude that our review of Defendant's claim may only proceed pursuant to rational basis review.

**b.      The sentencing procedure for serious youthful offenders does not violate Defendant's constitutional right to equal protection**

**{31}**    In our review of claims under the United States Constitution, we follow the federal rational basis test, "which only requires a reviewing court to divine the *existence* of a conceivable rational basis to uphold legislation against a constitutional challenge." *Rodriguez v. Brand W. Dairy*, 2016-NMSC-029, ¶ 26, 378 P.3d 13 (internal quotation marks and citation omitted). "[T]hose attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *Fed. Commc'n Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (internal quotation marks and citation omitted). A law "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 313. "Legislation can therefore survive a constitutional challenge under the federal test based solely on a judge's rational speculation [that is] unsupported by evidence or empirical data." *Rodriguez*, 2016-NMSC-029, ¶ 26 (alteration in original) (internal quotation marks and citation omitted).

**{32}**    For claims under the New Mexico Constitution, this Court has adopted a slightly modified rational basis test. *See id.* ¶ 25; *see also Trujillo*, 1998-NMSC-031, ¶ 30 (rejecting the federal version of the rational basis test, noting criticisms characterizing it as "toothless" and a "virtual rubber-stamp" (internal quotation marks and citations omitted)). New Mexico's "more robust standard establishes rational basis review in arguments and evidence offered by the challengers or proponents of a law rather than requiring the challengers to anticipate and address every stray speculation that may pop into a judge's head at any point in the case." *Rodriguez*, 2016-NMSC-029, ¶ 27. Thus, "[t]o successfully challenge the statute under this [modified] standard of review, [a challenger] must demonstrate that the classification created by the legislation is not supported by a firm legal rationale or evidence in the record." *Wagner v. AGW Consultants*, 2005-NMSC-016, ¶ 24, 137 N.M. 734, 114 P.3d 1050 (internal quotation marks and citation omitted).

**{33}**    Defendant argues that "[a]s a child convicted of a crime with a non-deliberate mental culpability, [he] was treated disparately from a class of children with that same mental state," and that this treatment is unlawful. Thus, our review under both the Fourteenth Amendment and Article II, Section 18 requires our examination of the legislative purpose in enacting the statutory distinctions between serious youthful offenders convicted of first-degree, felony murder and youthful offenders convicted of

second-degree murder. *See* § 31-18-15.3(D) (requiring a "serious youthful offender [who] is found guilty of first degree murder" to be sentenced under the Criminal Sentencing Act without an amenability hearing); § 31-18-15.3(F) (providing for an amenability hearing under the Delinquency Act "[w]hen the alleged serious youthful offender is convicted of a lesser offense than first degree murder"); § 32A-2-20(B) (providing for an amenability hearing under the Delinquency Act when a youthful offender is convicted of second-degree murder). We review the question pursuant to the New Mexico and federal rational basis standards, in turn.

**{34}** Under New Mexico's modified test, Defendant must show that the distinction created by the Legislature "is not supported by a firm legal rationale or evidence in the record." *Wagner*, 2005-NMSC-016, ¶ 24 (internal quotation marks and citation omitted). Under the federal test, Defendant must show that there is no conceivable rational basis for such a distinction. *See Rodriguez*, 2016-NMSC-029, ¶ 26. As an initial matter, we do not agree that serious youthful offenders convicted of second-degree murder and serious youthful offenders convicted of first-degree, felony murder belong to the same cognizable class simply because both crimes require that a defendant commit them with general, rather than specific, criminal intent. As we explain below, this Court has previously recognized the Legislature's reasoning for statutorily distinguishing second-degree murder from first-degree, felony murder. *See State v. Ortega*, 1991-NMSC-084, ¶ 26, 112 N.M. 554, 817 P.2d 1196 ("[T]he purpose of elevating what would otherwise be second degree murders to first degree murders is to single out those especially serious killings that warrant the law's most serious forms of punishment."), *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683. We nevertheless proceed with our rational basis analysis based on the proposed classification.

**{35}** Defendant argues that "[s]entencing [him] as an adult without the potential benefit of rehabilitation, whether as a function of retribution, deterrence, or incapacitation, does not serve an important governmental interest." Defendant directs the Court to consider the purpose of the Children's Code: "first to provide for the care, protection and wholesome mental and physical development of children coming within the provisions of the . . . Code." NMSA 1978, § 32A-l-3(A) (2009). He then argues that providing amenability hearings for all minors who are "similarly situated" to Defendant provides a process for achieving that goal. This argument fails to acknowledge the Legislature's decision, as previously recognized by this Court, to "join[] a nationwide movement to crack down on juvenile crime, and generally . . . expand[] eligibility for criminal court processing and adult correctional sentencing." *Jones*, 2010-NMSC-012, ¶ 31 (second and third alterations in original) (internal quotation marks and citation omitted).

**{36}** On several occasions, this Court has examined the Legislature's purpose in enacting the Delinquency Act. The *Jones* Court observed that the Legislature elected to make "it easier to prosecute a child charged with first-degree murder as an adult" while also "extend[ing] the protections of the juvenile system to all other alleged juvenile offenders by treating them as children throughout the adjudication process." *Id.* ¶ 32. The *Jones* Court further stated,

> Once charged with first-degree murder, a serious youthful offender is no longer a juvenile within the meaning of the Delinquency Act, and therefore is no longer entitled to its protections. [*See* § 32A-2-3(H) (2009).] As a result, serious youthful offenders are subject to the Rules of Criminal Procedure for the District Courts applicable to adults and are automatically sentenced as adults if convicted. *See id.*; Rule 10-101(A)(2)(a) NMRA [(2009)].

*Jones*, 2010-NMSC-012, ¶ 11. We have also stated that the goals of the Delinquency Act are "rehabilitation of the child, accountability, deterrence, protection of the public, and punishment for the crime committed." *State v. Tafoya*, 2010-NMSC-019, ¶ 18, 148 N.M. 391, 237 P.3d 693. Notably, the Legislature specifically omitted serious youthful offenders who commit first-degree murder from the protections of the Delinquency Act. *See* § 32A-2-3(H) (2009). The Legislature therefore appears to have made this choice in order to balance its obligation to protect society from the most violent juvenile offenders with the recognition that most children should not face adult consequences for their actions due to their potential for rehabilitation and lesser culpability.

**{37}**   Further, the Legislature has legitimate reasons for distinguishing a serious youthful offender who commits first-degree, felony murder from one who commits second-degree murder because first-degree, felony murder is not equivalent to second-degree murder. The rational basis for the Legislature's policy choice to distinguish between second-degree murder and first-degree, felony murder and for enacting greater punishment for the latter has long been acknowledged. "Second degree murder . . . may be elevated to first degree murder when it occurs in circumstances that the [L]egislature has determined are so serious as to merit increased punishment . . . ." *Ortega*, 1991-NMSC-084, ¶ 25. The *Ortega* Court stated,

> [O]ur felony-murder statute, requiring as it does both causation attributable to the defendant (who may be acting through an accomplice) and an intent to kill (or to do an act greatly dangerous to the lives of others or with knowledge that the act creates a strong probability of death or great bodily harm), is a valid exercise of the [L]egislature's authority to prescribe serious punishment for killings committed with the requisite criminal intent and that occur during the commission or attempted commission of a first degree or other inherently dangerous felony.

*Id.* ¶ 35.

**{38}**   Here, Defendant was charged with aggravated burglary, an "inherently dangerous felony," during the commission of which three victims were killed. *See Campos v. Bravo*, 2007-NMSC-021, ¶ 15, 141 N.M. 801, 161 P.3d 846 ("[A]ggravated burglary was correctly used as a predicate to felony murder."); *see also State v. Groves*, 2021-NMSC-003, ¶ 7, 478 P.3d 915 (noting that "this Court, through a number of cases, has attempted to discern what the Legislature meant by 'any felony'" in New Mexico's murder statute, § 30-2-1(A)(2)).

**{39}** Defendant's argument fails New Mexico's modified rational basis test because Defendant has not shown that the Legislature's statutory distinction is unsupported by a firm rationale or evidence in the record. Defendant's argument then necessarily fails the federal rational basis test because there is a conceivable reason supporting the Legislature's decision to grant an amenability hearing to a serious youthful offender convicted of second-degree murder and not to a serious youthful offender convicted of first-degree, felony murder. We therefore conclude that Defendant's sentence did not violate his right to equal protection under either the Fourteenth Amendment or Article II, Section 18.

## III.    CONCLUSION

**{40}** Based on the foregoing, we hold that Defendant's constitutional rights were not violated by being sentenced without an amenability hearing. Absent a constitutional violation, Defendant's juvenile sentencing requirements remain within the purview of the Legislature. We therefore affirm Defendant's convictions.

**{41}    IT IS SO ORDERED.**

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**BARBARA J. VIGIL, Justice**

**C. SHANNON BACON, Justice**