This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39820**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**BRANDON VILLALOBOS,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**James Lawrence Sanchez, District Court Judge**

Raúl Torrez, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Following a jury trial, Defendant Brandon Villalobos was convicted of second degree murder and tampering with evidence. Defendant argues on appeal that (1) his right to a speedy trial was violated; (2) the district court incorrectly found him competent to stand trial; (3) the district court violated his right to equal protection; and (4) the district court abused its discretion in finding him not amenable to treatment. For the reasons that follow, we affirm as to all issues raised.

**DISCUSSION**[1]

**I.       RIGHT TO A SPEEDY TRIAL**

**A.       Standard of Review**

**{2}**      Defendant's first argument is that his right to a speedy trial was violated. When evaluating whether an accused has been deprived of the right to a speedy trial, we follow the four-factor test established by the United States Supreme Court in *Barker v. Wingo*: (1) "[l]ength of delay," (2) "the reason[s] for the delay," (3) "the defendant's assertion of his right," and (4) "[actual] prejudice to the defendant." 407 U.S. 514, 530 (1972); *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387. "The Court weighs these factors according to the unique circumstances of each case in light of the [s]tate and the defendant's conduct and the harm to the defendant from the delay." *State v. Samora*, 2016-NMSC-031, ¶ 9, 387 P.3d 230 (alteration, internal quotation marks, and citation omitted).

**{3}**      In assessing these factors, "we defer to the [district] court's findings of fact, and we weigh and balance the *Barker* factors de novo." *Id.* (internal quotation marks and citation omitted). "[F]actual findings of a district court are entitled to substantial deference and will be reversed only for clear error." *State v. Gurule*, 2025-NMSC-010, ¶ 20, 563 P.3d 775 (internal quotation marks and citation omitted). Therefore, "when a district court considers the *Barker* factors and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Id.* (internal quotation marks and citation omitted). We proceed to consider the *Barker* factors.

**B.       Weighing the *Barker* Factors**

**1.       The Length of Delay**

**{4}**      The length of delay serves two functions in our analysis. *State v. Serros*, 2016-NMSC-008, ¶ 22, 366 P.3d 1121. First, if the length of delay crosses the threshold for presumptive prejudice, consideration of the *Barker* factors is triggered. *Id.* Second, "it is an independent factor to consider in evaluating whether a speedy trial violation has occurred." *Id.*

**{5}**      Neither party challenges on appeal the district court's determination that this is a complex case. Nor does either party dispute that the delay should be calculated from Defendant's arrest on February 19, 2014, to his second trial on February 4, 2020. Consequently, we agree with both parties that presumptive prejudice is established and that the delay of approximately seventy-one months and two weeks weighs heavily

---

[1]Because this is an unpublished memorandum opinion written solely for the benefit of the parties, *see State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361, and the parties are familiar with the factual and procedural background of the case, we omit a background section and leave the discussion of the facts for our analysis of the issues.

against the State. *See id.* (stating that a delay is presumptively prejudicial if it surpasses eighteen months for a complex case); *see, e.g.*, *State v. Brown*, 2017-NMCA-046, ¶ 17, 396 P.3d 171 (holding that a forty-two-month-delay in a complex case weighed heavily in the defendant's favor).

## *2.* The Reasons for the Delay

**{6}** Under the second factor in the speedy trial analysis, we evaluate the reasons for the delay. *See Serros*, 2016-NMSC-008, ¶ 29. "The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Id.* (internal quotation marks and citation omitted). We recognize four types of delay, each of which are attributed varying degrees of weight. *Id.* First is a deliberate attempt to delay trial for purposes of hampering the defense, which weighs heavily against the state. *Id.* Second is negligent or administrative delay, which weighs less heavily, but nonetheless against the state "since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* (internal quotation marks and citation omitted). Third is "appropriate delay, justified for a valid reason, such as a missing witness," which weighs neutrally. *Id.* (internal quotation marks and citation omitted). Finally, "delay caused by the defense . . . weighs against the defendant." *Id.* (internal quotation marks and citation omitted). With this in mind, we turn to examine the delay in this case.

### a. March 21, 2014 to June 30, 2017—Approximately thirty-nine months and one week of delay weighing against Defendant

**{7}** Defendant was arraigned on March 21, 2014. Evidence supports the district court's finding that "the question of Defendant's competency to stand trial was raised by the first defense counsel on March 21, 2014, at arraignment." At arraignment, defense counsel was asked if she had the opportunity to review the charges and grand jury indictment with her client. She responded that she had advised her client of the charges against him, the possible penalties, and his rights with respect to the arraignment hearing, but given her client's low mental functioning, she did not believe that he understood his rights or the charges against him. Defendant was found competent to stand trial on June 30, 2017. Thus, determination of Defendant's competency spanned from March 21, 2014 to June 30, 2017.

**{8}** The New Mexico Supreme Court has recently held that "delays due to competency evaluations are chargeable to the defendant." *Gurule*, 2025-NMSC-010, ¶ 27. Therefore, the time spent trying to determine Defendant's competency weighs against him. Furthermore, to the extent Defendant asks us to parse various periods from within the larger category of delay for his competency determination and weigh those periods neutrally or against the State, we decline. The New Mexico Supreme Court rejected this approach in *Gurule*. *Id.* ¶ 28.

**{9}** The approximately thirty-nine months and one week between March 21, 2014 and June 30, 2017, therefore weigh against Defendant.

**b.      July 1, 2017 to May 16, 2018—Approximately ten months and two weeks of delay weighing against Defendant**

**{10}**    Following the district court's determination that Defendant was competent to stand trial, Defendant's trial was scheduled for September 18, 2017. Defendant subsequently moved to continue that trial date and agreed to accept the delay caused by this continuance. Defendant's trial was reset for May 21, 2018. However, the May 21 trial did not come to fruition because on May 8, 2018, the district court suppressed some of Defendant's statements to the police, and on May 16, 2018, the State appealed this ruling.

**{11}**    As Defendant agreed to accept the delay caused by his motion to continue, we agree with both parties and the district court that the resulting delay weighs against Defendant. Thus, the approximately ten months and two weeks between July 1, 2017 and May 16, 2018, weigh against Defendant.

**c.      May 17, 2018 to July 23, 2019—Approximately fourteen months of delay weighing neutrally**

**{12}**    The New Mexico Supreme Court resolved the State's appeal by a "Dispositional Order of Affirmance" on June 24, 2019, and the mandate was issued on July 23, 2019. *See State v. Villalobos*, No. S-1-SC-37103 (N.M. S. Ct. June 24, 2019) (nonprecedential). Defendant argues that the time spent resolving the State's interlocutory appeal should weigh against the State. We disagree, concluding, as did the district court, that the time spent resolving the State's interlocutory appeal weighs neutrally. We explain.

**{13}**    "The assurance that motions to suppress evidence . . . are correctly decided through orderly appellate review safeguards both the rights of defendants and the rights of public justice. Given these important public interests, an interlocutory appeal by the government ordinarily is a valid reason that justifies delay." *State v. Flores*, 2015-NMCA-081, ¶ 28, 355 P.3d 81 (alteration, internal quotation marks, and citations omitted). An exception applies where the state appeals a "clearly tangential or frivolous issue," in which case the delay would weigh heavily against the state. *Id.* (internal quotation marks and citation omitted). "In evaluating the purpose and reasonableness of such an appeal, courts may consider factors including the strength of the government's position on the appealed issue, the importance of the issue in the posture of the case, and—in some cases—the seriousness of the crime." *Id.* (alteration, internal quotation marks, and citation omitted).

**{14}**    First, Defendant asserts that the State's appeal was unreasonable because its position on appeal was weak, as demonstrated by the fact that our Supreme Court issued a dispositional order affirming the district court's suppression of Defendant's statements, and by the fact that the State had other evidence of Defendant's guilt. We do not believe either assertion conclusively establishes that the State's position on appeal was weak. *See Samora*, 2016-NMSC-031, ¶¶ 6, 16 (concluding that the delay

caused by the filing of an interlocutory appeal weighed neutrally where our Supreme Court "issued a dispositional order affirming the district court" and where there was other evidence of the defendant's guilt).

**{15}** However, even were the State's position on appeal weak, the appeal was not unreasonable in light of the importance of the issue and the seriousness of the crime. Because Defendant's statements were incriminating, the issue was highly important. *See id.* ¶ 16 (holding that "the evidence was important because, if admitted, it served as evidence [of the defendant's admission of a material fact]"). Moreover, Defendant was charged with murder, which is arguably the most serious crime with which one can be charged. *See id.* (stating that the defendant "could be subjected to a sentence of life in prison if he were found guilty," which "illustrated the seriousness of [the] crime").

**{16}** Second, Defendant argues that the State's appeal was unreasonable because Defendant's case already had protracted delay caused by attempting to obtain a competency evaluation. However, concerning the delay attributable to determination of competency, the district court found that the "defense attorney[] fail[ed] to push the competency evaluation expeditiously." The evidence supports this finding; defense counsel admitted fault for the delay in the competency proceedings. Thus, defense counsel's failure to push the competency evaluation expeditiously, causing protracted delay, does not render the State's interlocutory appeal unreasonable.

**{17}** Finally, Defendant submits that because he might have been eligible for an amenability hearing, the delay caused by the State's interlocutory appeal should weigh differently because the prejudice caused to him was extreme. We disagree. Most importantly, as Defendant acknowledges, Defendant *did* receive an amenability hearing. Moreover, at the amenability hearing the court presumed Defendant amenable to treatment regardless of his age. Lastly, in its "Findings of Facts [and] Conclusions of Law Regarding Amenability to Treatment and Rehabilitation" the district court concluded that "[o]verall, the above factors weigh heavily in support of an adult sentence, *and would have done so if . . . Defendant was still under the age of* [*eighteen*] *years.*"

**{18}** We find noteworthy as well that Defendant does not allege or show that the State's appeal was brought in "bad faith" or for a "dilatory purpose." *See Flores*, 2015-NMCA-081, ¶ 29 (holding that the delay due to the state's interlocutory appeal weighed neutrally where "[the d]efendant assert[ed] that the [s]tate's appeal was weak. However, he [did] not allege or show that the appeal was brought in bad faith or for a dilatory purpose" (alteration, internal quotation marks, and citation omitted)).

**{19}** "The assurance that motions to suppress evidence . . . are correctly decided through orderly appellate review safeguards both the rights of defendants and the rights of public justice." *Id.* ¶ 28 (internal quotation marks and citation omitted). We believe that these interests were advanced here. Consequently, we conclude that the approximately fourteen months between May 17, 2018 and July 23, 2019, weigh neutrally.

**d. July 24, 2019 to December 16, 2019—Approximately four months and three weeks of delay weighing neutrally**

**{20}** After the mandate was issued, Defendant's case was set for trial on December 16, 2019. The only argument proffered by Defendant that this time should weigh against the State is that the State's imprudent appeal caused the May 2018 trial date to be reset. However, we have concluded that the State's interlocutory appeal was not unreasonable. Therefore, we agree with the State that during this period the case was proceeding normally toward trial, so the approximately four months and three weeks between July 24, 2019 and December 16, 2019, weigh neutrally. *See Brown*, 2017-NMCA-046, ¶ 19 (stating that where "the case was proceeding normally toward trial" the delay weighs neutrally "and do[es] not weigh against either party").

**e. December 17, 2019 to February 4, 2020—Approximately one month and two weeks of delay weighing against the State**

**{21}** Defendant's first trial ended in a mistrial because of the statement made by one of the State's witnesses when testifying before the jury. Defendant was successfully tried in a second such proceeding, which began on February 4, 2020. Both parties agree, as do we, that the approximately one month and two weeks between December 17, 2019 and February 4, 2020, weigh against the State.

**f. Overall determination of the reasons for delay**

**{22}** A mere approximately one month and two weeks of delay out of a total delay of approximately seventy-one months and two weeks weigh against the State. On the other hand, approximately forty-nine months and three weeks of delay weigh against Defendant. The balance of delay is neutral. We, therefore, conclude that the reasons for the delay factor weighs heavily against Defendant.

**3. The Defendant's Assertion of His Right**

**{23}** Under the assertion of the right factor, "we assess the timing of the defendant's assertion and the manner in which the right was asserted." *State v. Spearman*, 2012-NMSC-023, ¶ 31, 283 P.3d 272 (internal quotation marks and citations omitted). "We accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." *Id.* (alteration, internal quotation marks, and citation omitted).

**{24}** In this case, Defendant asserted his right to a speedy trial once on April 7, 2014, about two months after his arrest, and once more when the State appealed the district court's suppression ruling. Thereafter, he filed one motion to dismiss based on speedy trial on December 2, 2019, fourteen days before his first trial was set to begin, and one motion to dismiss based on speedy trial on January 17, 2020, a little less than one month before his second trial was to begin.

**{25}** "Early pro forma assertions are generally afforded relatively little weight." *State v. Valencia*, 2010-NMCA-005, ¶ 27, 147 N.M. 432, 224 P.3d 659. Also afforded relatively little weight are late assertions. *See State v. Laney*, 2003-NMCA-144, ¶ 24, 134 N.M. 648, 81 P.3d 591. Significant as well is that Defendant's assertions were mitigated by his counsel's admitted responsibility for nearly two years of delay. *See Samora*, 2016-NMSC-031, ¶ 20 ("[The d]efendant's assertions of the right were mitigated by his acquiescence to, and responsibility for, numerous delays."). Taking these considerations into account, we conclude that the assertion of the right factor does not weigh in favor of a speedy trial violation.

### 4.      Prejudice to Defendant

**{26}** "In a speedy trial analysis, if any one of the three *Barker* factors does not weigh heavily in favor of a defendant, as is the case here, [the d]efendant must show particularized prejudice in order to prove their speedy trial [right] was violated." *State v. Wood*, 2022-NMCA-009, ¶ 21, 504 P.3d 579. "We analyze prejudice to a defendant in a speedy trial case in light of three defense interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* (internal quotation marks and citation omitted).

**{27}** Defendant argues he was prejudiced because he was continuously incarcerated for almost six years while his case was pending. "When, as in this case, a defendant was continuously incarcerated for an extended period of time, it requires no speculation to determine that the defendant suffered some prejudice." *State v. Ochoa*, 2017-NMSC-031, ¶ 57, 406 P.3d 505.

**{28}** "But our inquiry does not end there. Though it is obvious that Defendant was prejudiced by virtue of his continuous incarceration, absent affirmative proof, we can only speculate as to the specific circumstances of his incarceration." *Id.* ¶ 60. "[A] defendant could conceivably suffer oppressive pretrial incarceration in a much shorter time, or suffer less prejudice during a longer period of incarceration." *Id.* Thus, "[w]hile . . . there is a presumption of prejudice when there is a lengthy incarceration, . . . the [d]efendant must still show some particularized prejudice from his pretrial incarceration." *Gurule*, 2025-NMSC-010, ¶ 53.

**{29}** Defendant asserts that he suffered unique prejudice because he was underage when he was arrested but was twenty-two by the time of his sentencing, and therefore he was too old to receive treatment from a Children, Youth and Families Department facility. Therefore, Defendant submits, he was denied a meaningful chance at being found amenable to treatment. However, as mentioned previously, Defendant received an amenability hearing at which the court presumed him amenable to treatment regardless of his age. As stated, following that hearing, the district court found that the amenability factors weighed "heavily in support of an adult sentence, and would have done so if . . . Defendant was still under the age of [eighteen] years." We therefore find this argument unpersuasive.

**{30}** Defendant also contends that he suffered particularized prejudice because "[h]is youth and developmental disability make [the time he spent incarcerated] particularly burdensome." Defendant cites in support *Serros.* However, the type of actual prejudice recognized in *Serros* is that suffered because of the *particular conditions* of the defendant's pretrial incarceration. *See* 2016-NMSC-008, ¶¶ 88, 93 (concluding that the defendant demonstrated particularized prejudice because he had been segregated, and therefore completely isolated for four and one-half years). Defendant cites as well *State v. Stock*, 2006-NMCA-140, 140 N.M. 676, 147 P.3d 885. Yet *Stock* was written in the context of impairment to the defendant's ability to mount a defense, and here there are no allegations on appeal that Defendant, or a witness for that matter, suffered memory loss. *See id.* ¶¶ 38, 42 ("[T]he memory of a child victim is particularly susceptible to the passage of time."). Defendant thus cites no controlling authority supporting the proposition that we may consider a Defendant's characteristics in assessing whether pretrial incarceration is particularly prejudicial. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority.").

**{31}** "[A] claim of particularized prejudice must be made through a review of the circumstances of a case, which may not be divorced from a consideration of the state and the defendant's conduct and the harm to the defendant from the delay." *Gurule*, 2025-NMSC-010, ¶ 42 (alteration, internal quotation marks, and citation omitted). In this case, absent suggestion that Defendant was subject to particularly prejudicial conditions of pretrial incarceration and since a large portion of the delay is attributed to Defendant, we defer to the district court's determination that Defendant did not demonstrate undue particularized prejudice. *See id.* ¶¶ 42, 53 (stating that "the [district] court in this case, the court we trust to make . . . factual determination[s], could not say whether the prejudice was undue" and that we afford substantial deference to this finding). We conclude that the prejudice factor does not weigh in favor of a speedy trial violation.

## 5. Balancing the *Barker* Factors

**{32}** As three of the four *Barker* factors weigh either against Defendant or do not weigh in favor of a speedy trial violation, we conclude Defendant's right to a speedy trial was not violated. Accordingly, we turn to consider Defendant's remaining arguments on appeal.

## II. COMPETENCY DETERMINATION

## A. Standard of Review

**{33}** Defendant next argues that the district court erroneously found him competent to stand trial. "It is a violation of due process to prosecute a defendant who is incompetent to stand trial." *State v. Rael*, 2008-NMCA-067, ¶ 6, 144 N.M. 170, 184 P.3d 1064 (alteration, internal quotation marks, and citation omitted). "A defendant is presumed competent to stand trial and bears the burden of demonstrating incompetence by a preponderance of the evidence." *Id.* Consequently, "[o]n appeal, we review the district

court's determination only for an abuse of discretion, viewing the evidence in the light most favorable to the judge's decision." *Id.* (internal quotation marks and citation omitted); *State v. Linares*, 2017-NMSC-014, ¶¶ 23-24, 32, 393 P.3d 691. "A district court abuses its discretion when its ruling is clearly against the logic and effect of the facts and circumstances of the case." *Rael*, 2008-NMCA-067, ¶ 6 (internal quotation marks and citation omitted). "Our inquiry is limited only to whether substantial evidence supports the conclusion the court reached." *Linares*, 2017-NMSC-014, ¶ 39.

**B.      Substantial Evidence Supports the District Court's Determination That Defendant Was Competent to Stand Trial**

**{34}**    "A person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Rael*, 2008-NMCA-067, ¶ 6 (alteration omitted). When a defendant's competence is at issue, his competency "shall be professionally evaluated by a psychologist or psychiatrist or other qualified professional recognized by the district court as an expert." NMSA 1978, § 31-9-1.1 (1993). Following such an evaluation:

> [If the] district court determines that a defendant charged with a felony is incompetent to proceed in the criminal case, but does not dismiss the criminal case, and the district court at that time makes a specific finding that the defendant is dangerous, the district court may commit the defendant . . . for treatment to attain competency.

NMSA 1978, § 31-9-1.2(B) (1999).

**{35}**    Here, following Defendant's evaluation by qualified professionals, the district court found that Defendant was not competent to proceed, that he was dangerous, and ordered him committed to attain competency. Following treatment, the district court found Defendant competent to stand trial.

**{36}**    As to this issue, Defendant's sole argument on appeal is that the district court abused its discretion in accepting Dr. Andrews' opinion that Defendant had been treated to competency over Dr. Fields' testimony to the contrary. But a district court does not abuse its discretion simply by accepting the testimony of one expert over another. *See Linares*, 2017-NMSC-014, ¶ 39 ("While it is true . . . that the record reflects that [the expert] . . . concluded that [the defendant] was competent . . . we cannot say that the court abused its discretion when it ultimately rejected the conclusion that [the defendant] is competent."). Instead, "[o]ur inquiry is limited only to whether substantial evidence supports the conclusion the court reached." *Id.*

**{37}**    Here, substantial evidence in the form of Dr. Andrews' testimony unquestionably supports the district court's conclusion that Defendant had attained competency. Dr. Andrews testified that: (1) he met with Defendant four different times; (2) he conducted a competency assessment called the CAST-MR; (3) the CAST-MR is a "good kind of

benchmark to which you can compare it to other people that had intellectual deficits and were found competent by the [c]ourts in those cases"; (4) on the CAST-MR, Defendant "scored higher than a normative sample of people that were found later competent in court," scoring "at or higher than those in that population that had MR that was [sic] found competent"; (5) in concluding that Defendant was competent, he examined the following factors: "[t]hat a person understands the charges against them, that they have an understanding of courtroom proceedings, . . . that they can assist their attorney and . . . that they have a factual and rational understanding of those things"; (6) based on Dr. Andrews interactions with Defendant, he believed Defendant had the ability to learn and retain information, a basic understanding of evidence, the knowledge that Defendant could ask his attorney to explain issues he didn't understand, and the understanding that he could be sentenced to prison; and (7) Defendant was competent to stand trial.

**{38}**   Because substantial evidence supports the district court's conclusion that Defendant was competent, we conclude that the district court did not abuse its discretion in finding Defendant competent to stand trial.

## III.   EQUAL PROTECTION

**{39}**   Defendant's next argument is that the district court violated his right to equal protection by sentencing him "as an adult because he effectively 'aged out' of the juvenile rehabilitation system." Defendant submits that "[s]entencing [him] as an adult and depriving him of treatment as a juvenile because he was [twenty-two] years old at the time of the amenability hearing is not supported by a firm legal rationale or evidence in the record." *See State v. Ortiz*, 2021-NMSC-029, ¶¶ 30, 32, 498 P.3d 264 (stating that "age classifications are subject to rational basis review" and that "to successfully challenge [a] statute under [New Mexico's modified rational basis test], a challenger must demonstrate that the classification created by the legislation is not supported by a firm legal rationale or evidence in the record." (alterations, internal quotation marks, and citation omitted)). Finally, Defendant contends that "[he] was statutorily entitled to an amenability hearing with the presumption that he was amenable to treatment as a juvenile."

**{40}**   Thus, Defendant appears to advance two ways that he was treated disparately because of his age: (1) he was deprived of treatment as a juvenile; and (2) he was denied a presumption of amenability. We do not agree and explain.

**{41}**   First, Defendant was not deprived of treatment as a juvenile. To the contrary, the district court treated Defendant as a youthful offender. NMSA 1978, Section 32A-2-20(C) (1993, as amended through 2023), requires that in cases involving youthful offenders, the district court weigh the listed factors to determine whether a child is amenable to treatment or rehabilitation as a child. The district court, after holding an amenability hearing, clearly weighed those factors. Defendant was therefore treated as a juvenile.

**{42}** Second, Defendant admits that at his amenability hearing he was presumed amenable to treatment. The presumption that a defendant is amenable to treatment or rehabilitation does not automatically require the district court to find a defendant in fact amenable. To the contrary, Section 32A-2-20(C) requires the district court to weigh the enumerated factors. As a result, a defendant is not denied a presumption of amenability merely because the court concluded that the presumption was outweighed by the factors listed in Section 32A-2-20(C).

**{43}** Finally, Defendant was not sentenced as an adult *because of his age*. After presuming Defendant amenable to treatment and weighing the amenability factors, the court concluded that

> Defendant is not amenable to treatment or rehabilitation as a child *or as an adult . . .* the above factors weigh heavily in support of an adult sentence, *and would have done so if . . . Defendant was still under the age of* [*eighteen*] *years. If . . . Defendant were under* [*eighteen*] *years of age, nonetheless, the* [*c*]*ourt would find by clear and convincing evidence that considering all factors, this Defendant would not have been amenable for treatment and should be punished as an adult.* The nature of the murder, multiple blows with a crowbar from a much larger young man to a much smaller young man speaks volumes against amenability for treatment and rehabilitation . . . this Defendant is not now, *and would not have been amenable to treatment and rehabilitation at any time after the murder.*

**{44}** We conclude that Defendant was not subject to disparate treatment on the basis of age. As a consequence, his right to equal protection was not violated.

## IV. AMENABILITY

### A. Standard of Review

**{45}** Defendant's final argument is that the district court abused its discretion in finding him not amenable to treatment. A district court's determination on amenability to treatment is reviewed under an abuse of discretion standard. *State v. Todisco*, 2000-NMCA-064, ¶ 36, 129 N.M. 310, 6 P.3d 1032. Such a determination will not be reversed "unless it is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). "The moving party bears the burden of establishing an abuse of discretion." *State v. Sosa*, 1997-NMSC-032, ¶ 7, 123 N.M. 564, 943 P.2d 1017, *abrogated on other grounds by State v. Porter*, 2020-NMSC-020, ¶ 7, 476 P.3d 1201.

### B. The District Court Did Not Abuse Its Discretion in Finding Defendant Not Amenable to Treatment

**{46}** Under Section 32A-2-20(C):

In making the finding[] [that the child is not amenable to treatment or rehabilitation as a child], the judge shall consider the following factors:

      (1)     the seriousness of the alleged offense;

      (2)     whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

      (3)     whether a firearm was used to commit the alleged offense;

      (4)     whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted;

      (5)     the maturity of the child as determined by consideration of the child's home, environmental situation, social and emotional health, pattern of living, brain development, trauma history and disability;

      (6)     the record and previous history of the child;

      (7)     the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of procedures, services and facilities currently available; and

      (8)     any other relevant factor, provided that factor is stated on the record.

**{47}**    Defendant first asserts that "[t]he court erred in finding clear and convincing evidence that [he] was not amenable to treatment in the juvenile system." *See State v. Nehemiah G.*, 2018-NMCA-034, ¶ 23, 417 P.3d 1175 ("The standard of proof for [the finding that the child is not amenable to treatment or rehabilitation as a child] . . . is clear and convincing evidence."). The only argument Defendant proffers in support of this assertion is that "Dr. Siegel conducted a very limited evaluation, whereas Dr. Brovko and Ms. Edwards conducted a thorough evaluation . . . . Their opinion was clearly more reasoned and there was no rational basis for disregarding it."

**{48}**    However, the district court did not disregard the testimonies of Dr. Brovko and Ms. Edwards. Rather, the district court explicitly described and considered their opinions in making its findings. In fact, in light of those opinions the court weighed the seventh factor—prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of procedures, services and facilities currently available—in favor of amenability. The district court nevertheless concluded that factor seven was outweighed by the other amenability factors and therefore Defendant was not amenable to treatment. "In light of the [district court's] methodical documentation of his consideration of the evidence as applied to the requisite statutory factors, we conclude that the district court made a reasoned and justified determination that

[Defendant] should be sentenced as an adult. That determination was not against the logic and effect of the facts of the case, nor was it clearly untenable." *Sosa*, 1997-NMSC-032, ¶ 12.

**{49}** Defendant also asserts that "[t]he district court order further found the fact that the crime was committed with a weapon weighed against a finding of amenability . . . . However, that factor is only concerned with the use of a 'firearm.' That factor should have been found in his favor." Defendant thus asks us to remand for the district court to reweigh the factors. We decline this request, and explain.

**{50}** First, in this instance, the district court did not fail to take this third factor—whether a firearm was used to commit the offense—into account. Rather, the court correctly found that "Defendant did not use a firearm to commit the offense."

**{51}** Second, notwithstanding this finding, the district court went further in its analysis and considered the fact that Defendant "did use a crowbar as a deadly weapon" to conclude that "therefore, this extremely violent factor weighs in favor of an adult sentence." The district court properly considered the use of the crowbar in its determination of the amenability of Defendant. Although the court made this finding in connection with its discussion of the third factor, Section 32A-2-20(C)(8) provides that the court can consider "any other relevant factor, provided that factor is stated on the record." In this instance, the district court's consideration of the fact that the crime was committed with a weapon other than a firearm is permissible so long as the court articulates that it has considered this factor on the record, which it did. We thus decline Defendant's request for a remand as to this factor.

**{52}** Finally, Defendant submits that "the district court focused almost entirely on the facts of the crime in finding [him] not amenable to treatment. This was error." This argument is contradicted by the court's "Findings of Facts [and] Conclusions of Law Regarding Amenability to Treatment and Rehabilitation" in which it considered expert testimony and the statutorily required factors in arriving at its conclusion.

**{53}** We conclude that the district court did not abuse its discretion in finding Defendant not amenable to treatment.

**CONCLUSION**

**{54}** For the foregoing reasons, the district court is affirmed on all grounds.

**{55}** **IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**KRISTINA BOGARDUS, Judge**